FRANK B. BAIRD, Respondent, *v.* ERIE RAILROAD COMPANY, Appellant, Impleaded with Others.

Reformation of instruments — mistake — action in equity to reform a contract so as to set out the real agreement between the parties — when such action is not barred because previous action at law to enforce such contract was dismissed.

1. The correction of mistakes in written instruments, occurring by accident, fraud or otherwise, is one of the acknowledged branches of equity jurisdiction, and the party injured by the mistake has the right to have it corrected upon satisfactory proof that it has been made.

2. If after making an agreement, in the process of reducing it to a written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief by reformation to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact.

3. The rule that several instruments of the same date, between the same parties, and relating to the same subject, may be con-

15

strued as parts of one contract when so intended by the parties, is applicable where an instrument, having been separated for a special purpose, the two parts were dated and executed several months apart, one part having been delivered in escrow to be held until the other part was executed and delivered.

4. The fact that an action at law was brought to enforce a contract and the complaint therein dismissed is not a bar to a subsequent action in equity to reform the contract so as to set out the real agreement between the parties, where the first action failed because the written contract could not be contradicted by parol evidence. The doctrine of election of remedies has no application to such a case.

*Baird* v. *Erie R. R. Co.*, 148 App. Div. 452, affirmed.

(Argued January 8, 1914; decided February 24, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered January 2, 1912, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Adelbert Moot* and *Helen Z. M. Rodgers* for appellant. The mistake found by the court was one of law, which equity will not relieve. (*Greene* v. *Smith,* 160 N. Y. 533; *W. U. Tel. Co.* v. *Shepard,* 49 App. Div. 345; *Trotter* v. *Brevoort,* 60 App. Div. 562; *Sibert* v. *McAvoy,* 15 Ill. 106; *Atherton* v. *Roche,* 192 Ill. 252; *Tilton* v. *Fairmount Lodge,* 244 Ill. 617; *Curtis* v. *Albee,* 167 N. Y. 360; *Hindley* v. *Manhattan Ry. Co.,* 185 N. Y. 335; *Leavitt* v. *Palmer,* 3 N. Y. 19; *Upton* v. *Tribilcock,* 91 U. S. 45.) Plaintiff has not furnished the clear, positive and unequivocal proof essential for the reformation of a contract. (*Nevins* v. *Dunlap,* 33 N. Y. 676; *Mead* v. *W. F. Ins. Co.,* 64 N. Y. 453; *Hinkle* v. *Royal Exchange,* 1 Ves. 32; *Andrews* v. *Essex F. & M. Ins. Co.,* 3 Mason, 6; *Ford* v. *Joyce,* 78 N. Y. 618; *Hearne* v. *M. Ins. Co.,* 20 Wall. 491; *McLaughlin* v. *Village of Whitehall,* 114 App. Div. 315; *Price* v. *Press Pub. Co.,* 117 App. Div.

854; 2 Pom. Eq. Juris. [3d ed.] § 859; 6 Pom. Eq. Juris. [3d ed.] § 681; *Hardy* v. *Harbin*, 154 U. S. 598; *Marsh* v. *Tyrrell*, 2 Hagg. Ecc. 84.) The evidence at most makes out a case for rescission and cancellation of the contract, not for reformation. (*Jackson* v. *Andrews*, 59 N. Y. 244; *Curtis* v. *Albee*, 167 N. Y. 360; *Hearne* v. *Marine Ins. Co.*, 20 Wall. 491.) Equity will not reform a contract at the instance of one who was not a party to it, nor in privity with any party. (*Willis* v. *Sanders*, 19 J. & S. 384; *Fischer* v. *Laack*, 85 Wis. 280; *Gould* v. *Glass*, 120 Ga. 50; *McWharter* v. *O'Neal*, 123 Ga. 247; *Mabb* v. *Merriam*, 129 Cal. 663; *Mott* v. *Richtmyer*, 57 N. Y. 49; *McMaster* v. *State*, 108 N. Y. 542; *Harsha* v. *Reid*, 45 N. Y. 415; *Clark* v. *Devoe*, 124 N. Y. 120; *Mygatt* v. *Coe*, 147 N. Y. 456.) Plaintiff is bound by his assignor's election to prosecute an inconsistent remedy, viz., a suit upon the contract unreformed. (*Steinbach* v. *Relief Ins. Co.*, 77 N. Y. 498; 12 Hun, 640; *U. P. R. R. Co.* v. *M. C. R. R. Co.*, 199 U. S. 160; *Draper* v. *Stouvenel*, 38 N. Y. 219; *Thomas* v. *U. F. Ins. Co.*, 108 Ill. App. 278; *Washburn* v. *G. W. Ins. Co.*, 114 Mass. 176; *Acer* v. *Hotchkiss*, 97 N. Y. 395; *Terry* v. *Munger*, 121 N. Y. 161: *People* v. *Stephens*, 71 N. Y. 527; *Moller* v. *Tuska*, 87 N. Y. 166; *Conrow* v. *Little*, 115 N. Y. 387.) The contract sought to be enforced in this action is invalid, because it involves an unlawful discrimination, and the payment by defendant of illegal rebates. (*N. Y. Tel. Co.* v. *Siegel-Cooper Co.*, 202 N. Y. 502; *U. P. R. R. Co.* v. *Goodridge*, 149 U. S. 680; *B. & O. R. R. Co.* v. *Diamond Coal Co.*, 55 N. E. Rep. 616; *Schofield* v. *Ry. Co.*, 43 Ohio St. 521.) The judgment appealed from attempts to enforce a contract for special rates, or rebates, which have been unlawful and forbidden by both State and Federal statutes for many years. (*United States* v. *Union Stockyards*, 226 U. S. 286; *Armour Packing Co.* v. *United States*, 209 U. S. 56; *N. H. R. R. Co.* v. *I. C. Comm.*, 200 U. S. 381; *U.*

*P. R. R. Co.* v. *Goodridge,* 149 U. S. 680; *N. Y. C. R. R. Co.* v. *United States,* 212 U. S. 481; *L. & N. R. R. Co.* v. *Mottley,* 219 U. S. 467; *C. I. & L. R. Co.* v. *United States,* 219 U. S. 486; *Baugher* v. *Nelson,* 52 Am. Dec. 694; *Avery* v. *E. L. Assur. Society,* 117 N. Y. 451.)

*George C. Riley, Simon Fleischmann* and *Robert F. Schelling* for respondent. The plaintiff having clearly, unequivocally, satisfactorily and convincingly established the facts entitling him to the reformation of the instrument of February 24, 1896, the trial court properly decreed that such instrument be reformed so as to express and formulate the true intention of the parties, and the contract intended to be, and actually made between them. (*Southard* v. *Curley,* 134 N. Y. 148; *Maxwell Land Grant Case,* 121 U. S. 325; *United States* v. *Budd,* 144 U. S. 154; 1 Moore on Facts, § 50; *C. S. Ry. Co.* v. *T. T. S. Ry. Co.,* 149 N. Y. 51; *Devereux* v. *Sun Fire Office,* 51 Hun, 147; *Baldwin* v. *Nat. Hedge Co.,* 73 Fed. Rep. 574; *Clarke* v. *Joselin,* 16 Ont. 68; *Tanning* v. *Carpenter,* 48 N. Y. 408; *Pitcher* v. *Hennesey,* 48 N. Y. 415; *Hunt* v. *Rousmanier,* 1 Pet. 13.) The Union Iron Company of Buffalo was and is a party to the entire contract and the plaintiff, as the assignee of said company, as well as of its lessee, the Union Iron Works, Buffalo, N. Y., is entitled to the benefits of the reformed switching instrument. (*Thompson* v. *Erie R. R. Co.,* 96 App. Div. 539; *Juilliard* v. *Chaffee,* 92 N. Y. 536; 1 Greenl. on Ev. § 284a; *Hutchins* v. *Hebbard,* 34 N. Y. 24; *Coddington* v. *Davis,* 1 N. Y. 186; *Hathaway* v. *Payne,* 34 N. Y. 92; *Wright* v. *Douglass,* 7 N. Y. 564; *Miller* v. *Carpenter,* 68 App. Div. 346.) The Union Iron Company of Buffalo, and the Union Iron Works, Buffalo, N. Y., as its lessee, are entitled to the benefits of the reformed instrument, upon the theory that it is a contract made for their benefit between the Buffalo Furnace and the railroad company, and plaintiff, as their assignee,

succeeded to their rights. (*Lawrence* v. *Fox*, 20 N. Y. 268; *Pond* v. *N. R. Water Co.*, 183 N. Y. 330; *Barlow* v. *Myers*, 64 N. Y. 41; *Coster* v. *Mayor, etc.*, 43 N. Y. 399; *Vulcan Iron Works* v. *Pittsburgh Eastern Co.*, 123 N. Y. Supp. 676; *Embler* v. *Hartford Co.*, 158 N. Y. 431.) The institution of the prior action at law by plaintiff's assignor does not constitute an election of remedy; nor does the judgment of nonsuit resulting therefrom constitute a bar, or operate as *res adjudicata* so as to preclude the maintenance of this action for reformation of the switching instrument and recovery thereunder. (*Spurr* v. *Home Ins. Co.*, 40 Minn. 424; *Brewster* v. *Striker*, 2 N. Y. 19; *Bitzer* v. *Bobo*, 39 Minn. 18; *G. B. & M. C. Co.* v. *Hewitt*, 62 Wis. 316; *Butler* v. *Hildreth*, 5 Met. 49; *Peters* v. *Ballistier*, 3 Pick. 495; *P., F. W. & C. Ry. Co.* v. *Swinney*, 91 Ind. 399; *Washburn* v. *Van Steenwyck*, 32 Minn. 336; Bigelow on Estoppel [4th ed.], 692; *Thomas* v. *Joslin*, 1 Am. St. Rep. 624; *Bowen* v. *Mandeville*, 95 N. Y. 237.)

WERNER, J. This is an action for the reformation of a written instrument and for the recovery of damages for the breach of its terms as reformed. Upon the facts as found by the trial court and affirmed by the Appellate Division, the area of debatable questions in this court is circumscribed by rules that are now too familiar for discussion. The courts below have very fully discussed the case in their elaborate opinions and we can add but little to what has been said.

The subject of the action is a contract consisting of two parts. The first part is the so-called right of way agreement, whereby the Union Iron Company, with the consent of its tenant, the Buffalo Furnace Company, granted to the New York, Lake Erie and Western Railroad Company, its receivers, successors and assigns a right of way over the property of the Union Iron Company in the city of Buffalo to the premises of

the railroad company, which lie further south. That instrument was executed in the latter part of 1895, and, so far as it goes, it correctly expresses the engagements of the parties thereto. There was a second part of the contract, however, which had originally been embodied in the same written instrument with the first part. It happened in the course of the negotiations between the parties and at the request of the railroad company that this first part, consisting of the grant of the right of way, was separated from the rest so that it might be recorded. It was in fact recorded, although prematurely and without the knowledge and consent of the grantors therein named.

Meanwhile the negotiations were continued over the terms of the second part of the contract, which related to certain switching rights and privileges to be granted by the railroad company in consideration of the right of way received by it. That this latter part of the contract was intended to be between the same parties who executed the contract for the right of way is clearly shown by the history of the transaction and especially by the various drafts of the instrument which passed between the parties. The discrepancies between them are readily and naturally explained by the changes in the personnel of the representatives of the railroad to whom the matter was successively referred.

Thus it occurred that when the final draft of the so-called switching contract was executed, it purported to have been made between the railroad company and the Buffalo Furnace Company, and according to the second paragraph it would seem to have been made solely for the benefit of the latter company. By the language of that paragraph the specified switching rates were restricted to the switching of " all loaded cars to and from the furnaces of the party of the second part " (the Buffalo Furnace Company) located on the property of the Union Iron Company. This was directly at variance with the last paragraph of the contract where the stipulation is, " if the said furnaces or

either of them shall be operated by other parties than the Buffalo Furnace Company, said parties so operating shall have the benefit of the switching rates named herein during the term of this agreement." The court has expressly found that the second paragraph of the written draft of the said contract does not correctly set forth the agreement which was actually made. The transaction, as established for the purposes of this appeal, resulted in a single contract resting in two parts, and the real parties thereto were the Union Iron Company, the railroad and the Buffalo Furnace Company. By mistake there was omitted from the written draft of the so-called switching contract an essential element, and that was the specific mention of the Union Iron Company as a party, and the stipulation that its successors, assigns and lessees should have the benefit of the specified switching rates. That omitted element has now been supplied by the decree of reformation which adds to the second paragraph of the draft of the contract the words, " or operated by the Union Iron Company of Buffalo, its successors, assigns or lessees," which words are to be placed at the end of the sentence providing that the railroad company "will transfer and switch all loaded cars to and from the furnaces operated by the party of the second part."

That this reformation of the contract is justified by the facts found does not seem to be open to doubt. The correction of mistakes in written instruments, occurring by accident, fraud or otherwise, has been one of the acknowledged branches of equity jurisdiction from time immemorial, and the party injured by the mistake has the right to have it corrected upon satisfactory proof that it has been made. (*Andrews* v. *Gillespie,* 47 N. Y. 487, 490; *Pitcher* v. *Hennessey,* 48 N. Y. 415.) The principle which operates upon the case at bar is very clearly stated by Pomeroy, as follows: "If * * *, after making an agreement, in the process of reducing it to a written form, the instrument, *by means of a mistake of law,* fails to

express the contract which the parties actually entered into, equity will interfere with the appropriate relief * * * by reformation to the same extent as if the failure of the writing to express the real contract was caused by a mistake of fact. In this instance there is no mistake as to the legal import of *the contract actually made;* but the mistake of law prevents the real contract from being embodied in the written instrument. * * * If a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief * * * although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing." (Pomeroy Eq. Jur. sec. 845.). To the same effect Story Eq. Jur. (Sec. 115); Paige on Contracts (Vol. 2, pp. 1904, 1905). In *Gillespie* v. *Moon* (2 Johns. Ch. 585) Chancellor KENT discussed this branch of equity jurisdiction with his characteristic clearness, and reviewed the authorities at length. The cases are all in accord in stating that equity will reform a written instrument in which the words used differ in legal effect from the contract actually made and established by satisfactory evidence.

The devolution of interest through which the plaintiff claims the right to prosecute this suit need not be discussed. It is enough to say that according to the findings he has succeeded to the rights of all who have any concern in the switching privileges as against the railroad company.

The defendant's contention, that the plaintiff is bound by his assignor's pursuit of an inconsistent remedy, cannot be sustained. (*Barnard* v. *Gantz*, 140 N. Y. 249; *Henry* v. *Herrington*, 193 N. Y. 218.) An action at law was brought upon the unreformed switching contract by one Thompson, as receiver of the Union Iron Works, then the operator of the furnaces on the land of the Union Iron Company. In that action the trial court granted a nonsuit, and the Appellate Division sustained the deci-

sion upon the ground that there could be no recovery in a court of law, because the action was upon a written instrument which could not be contradicted or changed by parol evidence. It was in that action, indeed, that the discovery was first made that the instrument as written was of a different legal import than the actual agreement of the parties. In these circumstances the doctrine of election of remedies can have no application, for we have here the precise instance in which equity comes to the aid of law by reforming the contract according to the intention of the parties and then enforcing it as reformed.

We find no difficulty in holding that the first instrument conveying the right of way to the railroad company, and the second instrument as reformed, granting the stipulated switching rates to the Buffalo Furnace Company, or any other operator of the furnaces on the lands of the Union Iron Company, were integral parts of a single contract, the parties to which were the Union Iron Company, the Buffalo Furnace Company and the railroad company. "It is undoubtedly the rule that several instruments of the same date, between the same parties, and relating to the same subject, may be construed as parts of one contract." (*Jackson* v. *Dunsbagh*, 1 Johns. Cas. 91; *Stow* v. *Tifft*, 15 Johns. 458; *Jackson* v. *McKenny*, 3 Wend. 233; *Van Horne* v. *Crain*, 1 Paige, 455; *Hills* v. *Miller*, 3 id. 254; *Cornell* v. *Todd*, 2 Denio, 130; *Hull* v. *Adams*, 1 Hill, 601; *Howe's Exr.* v. *Woodruff*, 21 Wend. 640; *Rawson* v. *Lampman*, 5 N. Y. 456.) These cases were cited in *Mott* v. *Richtmyer* (57 N. Y. 49, 64), in which it was held that the rule has no application to instruments bearing different dates and executed at different times. The *Mott* case was properly decided upon its peculiar facts, but here the conditions are quite different. In the case at bar the two instruments, although dated and executed several months apart, are in fact to be considered as having been executed together, for the court has found that the instrument granting the right

of way was delivered in escrow to the railroad company, to be held by it until the switching part of the contract should be executed and delivered, and that the railroad company recorded the instrument, granting to it the right of way, without the knowledge or consent of the Union Iron Company or the Buffalo Furnace Company. In these circumstances it is but just to hold that the case at bar falls within the general rule applicable to instruments executed by the same parties, with reference to the same subject-matter and at the same time.

If it were necessary to go further we could also plant the judgment on the ground that the switching contract, considered as a separate and independent undertaking, could be enforced for the benefit of the Union Iron Company under the rule of *Lawrence* v. *Fox* (20 N. Y. 268), very recently applied in *Pond* v. *New Rochelle Water Co.* (183 N. Y. 330). The learned counsel for the defendant very correctly argues that there has been a manifest tendency to restrict the doctrine of *Lawrence* v. *Fox*, but the discussion is really academic in the case at bar, because the Union Iron Company, for whose benefit the contract was made, paid the full consideration for it, and is thus directly brought within the reason of the principle.

We think that the Federal and State statutes prohibiting special rates and rebates have no relation to the case at bar. The Federal act in express terms excludes from its operation all transportation that begins and ends wholly within one state. This was a switching contract, confined by its terms to the territory which it describes as being within the city of Buffalo. As to the application of our own Public Service Commissions Law we need only suggest that it was not enacted until 1907, and this contract as reformed dates back to 1896.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN, CUDDEBACK and MILLER, JJ., concur.

Judgment affirmed.