NEW YORK AUCTION COMPANY, INC., Appellant, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY, Respondent.

(Argued October 18, 1932; decided November 22, 1932.)

*Stephen Brooks-Rosenthal* and *Max Edelman* for appellant. When parties have made an agreement, and there is no allegation of any mistake in it, and in reducing it to writing, they, by mistake, either because they did not understand the meaning of the words used, or their legal effect, failed to embody their intention in the instrument, equity will grant relief by reforming the instrument, and

compelling the parties to execute and perform their agreement as they made it; and it matters not whether such a mistake be called one of law or of fact. (*Maher* v. *Hibernia Ins. Co.*, 67 N. Y. 283; *Susquehanna Steamboat Co.* v. *Anderson*, 239 N. Y. 285; *Pitcher* v. *Hennessey*, 48 N. Y. 415; *Born* v. *Shrenkeisen*, 110 N. Y. 55; *Baird* v. *Erie R. R. Co.*, 210 N. Y. 225; *Paskie* v. *Commercial Casualty Ins. Co.*, 223 App. Div. 603; *Millspaugh* v. *Cassidy*, 191 App. Div. 221; *Tilden* v. *Tilden*, 8 App. Div. 99; *Clarksburg Trust Co.* v. *Commercial Casualty Co.*, 40 Fed. Rep. [2d] 626; *Philippine Sugar Development Co.*, v. *Government of Philippine Islands*, 247 U. S. 385; *Welles* v. *Yates*, 44 N. Y. 525.) The defendant is bound by the agreement of its underwriters that employees in charge of merchandise on plaintiff's premises at night time were covered, whether watchmen or otherwise. (*Moran* v. *Standard Oil Co.*, 211 N. Y. 187.)

*William J. McArthur* for respondent. There is no evidence that the defendant ever made any agreement to issue a policy of insurance covering the plaintiff against loss occurring in its premises in the absence of a custodian as defined in the policy and while watchmen only were on duty. (*Devens* v. *Mechanics & Traders Bank*, 83 N. Y. 71; *Northrop* v. *Piza*, 43 App. Div. 284; *Robertson* v. *Globe*, 223 App. Div. 296; *Metzger* v. *Ætna Ins. Co.* 227 N. Y. 411; *Curtis* v. *Albee*, 167 N. Y. 360; *Southard* v. *Curley*, 134 N. Y. 148.)

CRANE, J. The defendant is a Maryland corporation carrying on insurance business in New York State with its principal office at 75 William street, New York city. At all the times herein mentioned Mr. Fausel and Mr. Ditman were the New York underwriters authorized to issue policies. " If the underwriters feel that the risk is writable, why they issue a policy of coverage." Alonzo G. Oakley and Edward R. Lewis were the managers of the New York office with one Kearn J. Mullen "Assistant

to the Managers." This is the designation of titles on the authorized letterhead of the company for its New York business. Mullen was an employee on salary and commission who had been with the company over twenty years. While not an official he had been made "Assistant to the Managers" to facilitate him in procuring business. The managers needed no assistant but they wanted business, and this title was conferred on Mullen to give him a standing with customers. This was the company's representation for its benefit; prospective policyholders would think Mullen an employee of standing and importance with his concern.

Mullen procured the insurance of the New York Auction Company, Inc., in 1922. He was friendly with John G. Noakes, its president, and solicited its insurance. This company was and is a raw fur selling organization, doing a strict brokerage business, selling for the account of shippers on a commission basis. Sales in one year amounted to eight or nine millions of dollars; another fifteen millions. At first it occupied 218 West Twenty-sixth street, and later and in 1929, 218 to 222 and 226 West Twenty-sixth street, New York city.

Mullen placed with the defendant burglary, also "hold-up" insurance. This latter is in question here. In 1922 Mullen examined the plaintiff's premises and became fully acquainted with conditions and requirements. The plaintiff acted on his advice and suggestions at all times. Another employee of the defendant named Stock made examinations of the premises for the burglary insurance and advised modifications in building equipment and construction which were made. Reports were made to the company. Both Mullen and Stock knew that the plaintiff's business was transacted in the day time and its place closed at night with only watchmen in charge. At first the auction company employed its own watchmen, later those of the Holmes Electric or

Patrol Company. The insurance policies were renewed from year to year up to and including 1929.

In the spring of that year Noakes' attention was called to the wording of the " hold-up " policy which indicated that there was a lapse in the coverage. The policy agreed to indemnify the assured for all loss or damage to property occasioned by robbery within the assured's premises. It was a twenty-four hour coverage, the mistake of making it only twelve hours having been cured by Mullen. Section " e " of item 5 of the declaration covered the property " while at least one custodian is on duty therein." Item 12 read: "A watchman or guard with no other duties will be on duty in the premises or at the door of the premises when regularly open for business, while this policy is in force, *except as herein stated:* Three watchmen on duty within the premises." The policy was subject to conditions called " definitions," one of which was " In no event shall a watchman or a porter be considered a custodian."

The company knew at the inception of the first policy in 1922 and had continuing knowledge not only from Mullen, but from Stock, that watchmen were in charge of the defendant's place at night when everybody else had gone home. Noakes desired to know before the premium for the 1929–30 policy was paid just what these provisions meant. At least one custodian must be on duty on the premises. The insured had stated that three watchmen were on duty within the premises. Custodian is one having custody and custody is to have watch, care or charge of something. This is the English language according to the dictionary (Funk & Wagnalls).

The defendant through its employees at the taking of the insurance knew that the plaintiff had its property in the custody of watchmen at night and nobody else. What then was the meaning of the definition " In no event shall a watchman or a porter be considered a custodian? " Mullen was sent for and he assured Noakes

that the policy covered watchmen and that the plaintiff was fully protected. Noakes, however, wanted something more. Mullen talked with the underwriters Fausel and Ditman who issued the policies for the insurance company, and it was their understanding that the policy covered the risk as understood by Noakes and Mullen. In other words, the agreement was to insure the plaintiff as it transacted its business and as it left its property guarded at night solely by watchmen.

Mullen swears positively that this was his understanding and he testifies: " They [Ditman and Fausel] agreed that employees of the New York Auction Company were covered by the policy — whether watchmen or otherwise." Thereupon Mullen wrote the following letter to the plaintiff:

" R. Howard Bland, President.

" United States Fidelity and Guaranty Company,

" 75 William St.,

" New York City, *May* 24, 1929.

"Alonzo Gore Oakley,

" Edward R. Lewis,

 " Managers.

" Kearn J. Mullen,

 "Assistant to the Managers.

" Mr. J. Gordon Noakes, Manager,

" New York Auction Co.,

" 212 West 26th Street,

" New York City.

" Dear Sir: In reference to Messenger and Interior Robbery Hold-Up Policy number MIR-39724, dated March 23, 1929 — it is the intent of this policy to protect the interior of your building against loss of property for twenty-four hours each day while the policy is in force. Employees on duty when you are not open for business will be considered as custodians.

" Very truly yours,

" K. J. MULLEN

" KJM:P      *"Assistant to the Managers."*

Thereafter the plaintiff kept the policy for 1929–30 and paid the premium.

On January 16, 1930, between the hours of two A. M. and five A. M., a robbery occurred inside the plaintiff's premises while watchmen employed by it were in charge, and property taken to the value of $22,678 and over.

The insurance company now claims that the policy did not cover watchmen as custodians and refuses to pay. This action was brought to reform the policy so as to make it conform to the understanding and agreement of all the parties to it, the plaintiff and the agents and the representatives of the defendant who wrote it. Upon the evidence as presented the case seems clear. Mullen, the defendant's employee, says this was his understanding and he supposed the policy covered such a risk. He expressed himself in writing. This was the understanding of the underwriters and surely it was the expressed intention of the plaintiff's president before he paid for the insurance. This is not a case where the terms of a policy are sought to be modified later by some unauthorized agent. (*Drilling* v. *New York Life Ins. Co.*, 234 N. Y. 234.) The underwriters authorized to write policies understood they were covering this risk and the mistake is that the writing does not express the agreement they intended. The courts have repeatedly met such cases by affording relief. (*Maher* v. *Hibernia Ins. Co.*, 67 N. Y. 283, 290; *Susquehanna Steamship Co.* v. *Andersen & Co.*, 239 N. Y. 285, 297; *Pitcher* v. *Hennessey*, 48 N. Y. 415, 424; *Born* v. *Schrenkeisen*, 110 N. Y. 55, 59; *Baird* v. *Erie R. R. Co.*, 210 N. Y. 225, 231, 232.)

Whether in view of Mullen's knowledge of plaintiff's affairs and methods of doing business, the defendant would be estopped from denying coverage to watchmen (*Plumb* v. *Cattaraugus County Mut. Ins. Co.*, 18 N. Y. 392, 394), we need not discuss nor need we touch upon the responsibility of the defendant for the acts and representations of an employee held out as assistant

manager. All we now hold is that the complaint should not have been dismissed as the plaintiff on the evidence presented was entitled to the relief demanded.

The judgment of the Appellate Division and that of the Special Term should be reversed and a new trial granted, with costs to abide the event.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgments reversed, etc.