SADOWSKI *v*. GENERAL DISCOUNT CORP.

1. Contracts — Duration — Unambiguous Provisions — Servicing Mortgages.

Rights of parties under portion of contract pertaining to services to be rendered by plaintiff to defendant in the servicing of mortgages insured by the Federal housing administration, which, when read in connection with the rest of the contract, is not ambiguous, are controlled as to duration by definite contract period of two years.

2. Same—Written Contracts—Ambiguity—Parol Evidence.

In the absence of fraud or mistake, the rights of parties under an unambiguous provision of a written contract relative to servicing of mortgages on real estate are controlled thereby and prior, contemporaneous or subsequent talk as to its scope and purport is inadmissible.

3. Corporations—Language and Scope Not Subject to Subsequent Enlargement by Officers of Corporate Party.

The language and scope of a contract which was effected through corporate action of one of the parties thereto and which contains an unambiguous provision as to subject matter of controversy cannot be enlarged by subsequent expression of corporate officers.

4. Same—Officers—Interpretation of Contracts.

Corporate officers, who merely as such have no power to make a contract thereafter questioned, have no power to change or interpret it and their understanding of it is not binding on the corporation.

McAllister and Butzel, JJ., dissenting.

Appeal from Wayne; Miller (Guy A.), J. Submitted April 17, 1940. (Docket No. 42, Calendar No. 40,992.) Decided November 13, 1940.

Assumpsit by Felix P. Sadowski against General Discount Corporation, a Michigan corporation, to

Parol evidence and interpretation of integrated contract, see 1 Restatement, Contracts, §§ 230, 231, 237, 238.

recover claimed compensation for services. Judgment for defendant. Plaintiff appeals. Affirmed.

*Schmalzriedt, Frye, Granse & Frye (Louis H. Fead,* of counsel), for plaintiff.

*Bratton & Bratton (Fred G. Dewey,* of counsel), for defendant.

WIEST, J. This action at law was brought to recover compensation claimed under contract relative to the creation, processing and sale of Federal housing administration mortgages by plaintiff for defendant.

Upon trial before the court without a jury, judgment was entered in favor of defendant. Plaintiff reviews by appeal.

The contract between the parties was a lengthy document, executed October 16, 1936, and ran for a period of two years. Defendant was duly licensed to become a mortgagee under Federal housing administration insured mortgages and was engaged in such business.

Under the contract plaintiff was granted:

"First:  *  *  *  the exclusive right for a period of two years from the date hereof, unless terminated prior thereto in the manner provided herein, to sell and dispose of mortgages owned by it (defendant), and certificates representing the beneficial interest therein or created hereafter, and to complete and close at his own expense all of its mortgage applications now on hand, and not sold, or hereafter obtained, to the extent that said mortgages fully comply with the provisions of the national housing act and the administrative rules and regulations under title II of said act, and to the extent that such mortgages shall be eligible for insurance under said act and administrative rules and to the extent that such mortgages shall be accepted by the Federal housing

administration for insurance under said act and the administrative rules, and to the extent that said mortgages are sold and bankable orders for the purchase of same are delivered to the first party, and to that end first party agrees to deliver and turn over to second party all applications, finished and unfinished, for such mortgage loans.

"Second: All mortgage applications in process of closing and which have heretofore been sold by first party, shall be completed by first party at its own expense."

The contract at some length detailed the work to be done by plaintiff and the compensation to be received by him and the method of computation, inclusive of paragraph 7, which reads:

"In the event of sale of mortgages in which the allowance for servicing charges is in excess of one-half of one per cent., the first party shall pay such excess to second party monthly."

Plaintiff has received his full compensation for the contract period of two years but, in this action, seeks to recover all excess service fees collected and to be collected by defendant on all mortgages created, processed, and sold, during the two-year term, by plaintiff. This would extend the operation of the contract beyond the two-year period.

The trial judge held the contract period controlled and barred the recovery sought.

Plaintiff contends the contract compensation for excess service fees continued as a matter of law under section 7, and if it be held otherwise then that section is ambiguous and parol testimony of the understanding of plaintiff and expressions to like effect by officers of defendant company commanded a holding that it be so construed.

Section 7, read in connection with the rest of the contract, is not ambiguous and the definite contract

period of two years controls the rights of the parties and, in the absence of fraud or mistake, excludes prior, contemporaneous and subsequent talks as to its scope and purport.

The contract on the part of defendant was by corporate action and, where it speaks, its language and scope cannot be enlarged by subsequent expression of its officers.

Corporate officers, merely as such, having no power to make the contract in question, have no power to change or interpret it and their understanding of the contract is not binding on the corporation. *Peek* v. *Detroit Novelty Works,* 29 Mich. 313; *Humphrey* v. *Onaway-Alpena Telephone Co.,* 204 Mich. 97; *Lawrence* v. *Washington-Detroit Theatre Co.,* 190 Mich. 44; *Mayhew* v. *Edward G. Budd Manfg. Co.,* 258 Mich. 381.

Judgment is affirmed, with costs to defendant.

Bushnell, C. J., and Sharpe, Chandler, and North, JJ., concurred with Wiest, J.

Butzel, J. *(dissenting)*. I cannot concur in the opinion upholding the decision of the trial court. Some background is necessary to an understanding of the problem in the case. Before the contract was executed, defendant had been in the real estate mortgage business. It secured applications for loans, made the mortgages, had them insured by the Federal housing administration, and sold them to agencies of the Federal government, to banks, and to private investors. Its business was highly unprofitable at the start, having resulted in a loss of over $20,000 in the first six months; it had the additional discomfort of threatened litigation by applicants who claimed losses through defendant's failure to make loans after acceptance of the applications. Eagerness to stop the losses and other difficulties was

manifested by defendant's desire to sell the enterprise, but it refused an offer of $4,000, insisting upon $6,000 plus indemnification against the threatened litigations and the undertaking by the purchaser to carry out the previous loan commitments. Plaintiff had been employed by defendant company. He negotiated taking over defendant's mortgage business; terms were agreed upon, and defendant's board of directors adopted a resolution authorizing the execution of the contract upon written, approval of counsel.

The contract was quite complex. Plaintiff put up a guarantee fund to insure his performance of the contract. He rented part of defendant's offices, guaranteed to pay defendant at least $750 per month in fees for closing mortgage applications and agreed to take care of all of defendant's previous mortgage commitments as well as to repay defendant all expenses such as abstracts, attorneys' opinions, surveys, et cetera, that had been advanced on mortgage applications. In addition to the $750 per month guarantee, defendant was given an option to cancel the agreement if plaintiff failed to produce in any three-month period at least $4,500 in fees from closing mortgage applications. The agreement was prepared by counsel then representing defendant, a firm of high repute. Plaintiff set up his offices with 25 employees to take care of the business.

I agree with my Brother that there is no ambiguity on the face of the agreement, but I cannot agree with his construction. His conclusion appears illogical when he states that "the contract * * * ran for a period of two years," and then concludes that there is a "definite contract period of two years" which "controls the rights of the parties." While the agency set up was to endure for two years, there is nothing in the instrument that declares such a limit to the life span of rights acquired under

it.   The opinion of my Brother relies on the two-year limitation of the first section as governing all rights to accrue under the engagement.   Under this first section, the first party "grants unto the second party the exclusive right for a period of two years * * * to sell and dispose of mortgages owned by it," et cetera, and from which plaintiff may make a profit.   The seventh section, however, upon which this suit is founded, deals with an additional profit or compensation which accrues to plaintiff "in the event of sale of mortgages in which the allowance for servicing charges is in excess of one-half of one per cent.," in which event defendant is to "pay such excess" to plaintiff "monthly."   This section, as the following explanation will show, was intended to take care of plaintiff's profit when the buyer of the mortgage is the R. F. C. Mortgage Company, a Federal agency, where the sale contemplates that the mortgagee will be under a service contract to take care of the management of the mortgage for a fee of one-half of one per cent. per annum.

The administrative rules and regulations of the Federal housing administration in force at the time the contract was made permitted the mortgagee to require of the mortgagor throughout the life of the mortgage a service charge not to exceed one-half of one per cent. per annum upon the outstanding monthly balances.   If the mortgage is sold to the R. F. C. Mortgage Company, a service contract was permitted whereby the original mortgagee collects the monthly payments from the mortgagor and transmits them to the R. F. C. Mortgage Company for which the R. F. C. Mortgage Company is charged a service fee of one-half of one per cent. per annum. It is with reference to this service fee paid by the R. F. C. Mortgage Company that the seventh section of the contract relates.   The servicing contract pro-

viding for this "excess service fee" might be cancelled by the R. F. C. on a 30-day notice. The service fee charged to the mortgagor was to be retained by the defendant for its own benefit. The "excess service fee" charged the R. F. C. Company, like the fee required of the mortgagor, runs for the life of the mortgage, except that the R. F. C. contract reserved in the R. F. C. Company a 30-day option to terminate it.

Any two-year limitation is only in the first paragraph of the contract before us, and it limits by its very letter the establishment of the agency, the opportunity to serve. The compensation provision of section 7 deals with a subject matter that was likely to be long-lived. This section might be described loosely as an equitable assignment of defendant's R. F. C. contract rights to the excess service fees arising out of mortgages sold by plaintiff. The terms of limitation of the opportunity clause should not be wrested from one context and carried over into the later-appearing "assignment" clause so as to derogate from the broad grant. If the "assignment" were intended to be limited to the duration of the agency, it would seem that the natural place to express such a qualification would be in the "assignment" clause itself, for the parties were dealing there with a subject matter that was clearly known in all likelihood to have a much longer life than the agency itself. My Brother's construction would give plaintiff only a jagged benefit under section 7, for, under his interpretation, the mortgages sold in the early days of the agency would bring plaintiff almost two years' collection of excess service fees, while those consummated in its last days would bring little or none. I see no occasion, from the language used or the subject matter dealt with, to imply by construction any such carving out of the right so

broadly granted.  In my view, once a mortgage was sold to the R. F. C. Mortgage Company, plaintiff acquired a vested right to all excess service charges as they accrued during the life of the mortgage, subject only to the right of the R. F. C. Mortgage Company to cancel its servicing contract with the mortgagee according to the option reserved.  I see nothing in the contract itself which was intended to give plaintiff a diminishing compensation for the services rendered as the life span of the agency approached its terminus.

Even if the language of the contract were deemed ambiguous, which is not my view, I believe plaintiff sustained the burden of establishing its meaning by evidence dehors the instrument itself.  Opposed to the positive testimony of plaintiff, the attorney who drew the contract, and the man who was president of defendant at the time the contract was executed, there is testimony of other witnesses, some of which is characterized largely by testimony that they did not remember statements made by plaintiff's witnesses as to what took place.  Notwithstanding our inclination to follow the conclusion of the trial judge as to facts which are partially in dispute, I believe the determining factor is the fact that the contract was prepared by defendant and is to be construed against it.

"If the intent is not clear, ambiguities will be solved [resolved?] against the party who was relied upon to, and who did, select the language of the contract."  *Mills Novelty Co.* v. *Morett,* 266 Mich. 451, 457.

Defendant cites several cases involving contracts between insurance companies and their agents and claims they support a rule that the agent is not entitled to commissions on renewal premiums after

his agency terminates unless the contract specifically grants such a right. *Fidelity & Deposit Co.* v. *Washington Life Ins. Co.*, 193 Fed. 512; *Masden* v. *Travelers' Ins. Co.* (C. C. A.), 52 Fed. (2d) 75 (79 A. L. R. 469); *Fabian* v. *Provident Life, etc. Ins. Co.*, 5 Fed. Supp. 806; *Locher* v. *New York Life Ins. Co.*, 200 Mo. App. 659 (208 S. W. 862). Even if we were to overlook the inappositeness of the analogy, the Federal cases are of no help, for each one dealt with a contract that specifically defined the rights of the agent on termination of the agency. The Missouri case cited explained the result as inevitable "where the right to commissions on renewals rests, in part, on the consideration of the services by the agent to the company in keeping the policies written by him alive." In the last analysis, the analogy is hardly helpful, for, as pointed out by the annotation in 79 A. L. R. 475, the right of the insurance agent to commissions on renewals "depends upon the contract existing between the agent and the insurance company." We are only back to the contract before us and to the problem of interpreting the specific provision dealing with a long-lived subject matter in a different sphere of business. It is indeed difficult to see how the disposition of the problem of insurance commissions can help us in deciding the unique problem before us now. The construction contended for by plaintiff seems to be more in accord with the law and reasonable business expectations than the interpretation of the trial court.

The judgment should be reversed and the cause remanded for ascertainment of damages, with costs to plaintiff.

McAllister, J., concurred with Butzel, J. The late Justice Potter took no part in this decision.