**GENERAL DISCOUNT CORPORATION v. SADOWSKI.**

No. 11065.

United States Court of Appeals Sixth Circuit.

June 2, 1950.

Fred G. Dewey, Detroit, Mich. (Guy G. Bratton, Detroit, Mich., Fred G. Dewey, Detroit, Mich., on the brief), for appellant.

Waldo Granse, Detroit, Mich. (Schmalzriedt, Frye, Granse & Frye, Detroit, Mich., Miller, Canfield, Paddock & Stone, Detroit, Mich., on the brief), for appellee.

Before HICKS, Chief Judge, and SIMONS and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This appeal is from a final judgment and decree of the district court reforming a contract in writing between the parties; and, under such reformation, entering a money judgment for $96,718.88, with interest, in favor of Felix P. Sadowski against the appellant corporation. The well done opinion of the district judge embraced his findings of fact as well as his conclusions of law. It would be idle to rewrite in detail the entire factual setting of the case, inasmuch as he has recorded an elucidating, comprehensive narrative. We shall indulge, therefore, in a simple statement of the salient facts.

The appellant, having been unsuccessful in its operations as a licensed mortgagee under the National Housing Act, 12 U.S.C.A. § 1701 et seq., and being actually willing to sell its mortgage loan business for a small sum, entered into a written contract with appellee, its former employee, by which, as independent contractor, he was granted exclusive right for a period of two years, unless terminated in a prescribed manner, to complete and sell F.H.A. mortgages then owned by appellant, to obtain applications for additional mortgages of that type, and to process and sell them through appellant as licensed mortgagee. The F.H.A. mortgages were long-term loans carrying a maximum interest rate of five percent and providing for the payment by the mortgagor of monthly installments covering principal, interest, taxes, insurance and servicing fees.

A licensed mortgagee was permitted by the Federal Housing Administration to collect from the mortgagor certain charges for creating, processing, and servicing mortgages. Servicing a mortgage means the collection of monthly instalments, making required disbursements, and remitting to the owner of the mortgage the portions of the payments to which the owner is entitled. A monthly servicing fee not exceeding one-half of one percent on unpaid balances was charged to the mortgagor on mortgages made on application received prior to February 3, 1938. Sales of mortgages to the Reconstruction Finance Corporation were made upon terms which added an additional service fee to that of the one-half of one percent charged monthly to mortgagors. Appellant contends that, upon termination of the two-year period during which the appellee was granted the exclusive rights to sell and dispose of its mortgages, appellee was not entitled to servicing fees in excess of one-half of one percent, as provided for in the seventh paragraph of the contract.

The paragraph in question provides: Seventh: "In the event of sale of mortgages in which the allowances for servicing charges is in excess of one-half of one percent, the first party [the appellant] shall pay such excess to second party [the appellee] monthly." [81 F.Supp. 381, 384.] To carry out the intention of the parties as revealed by the evidence, this quoted clause of the contract was reformed by the district court to read, as follows: "Seventh: In the event of sale of mortgages in which the allowance for servicing charges is in excess of one-half of one percent, the first party (defendant) shall pay such excess to second party (plaintiff) monthly, and the payment of such excess servicing charges by the first party (defendant) to the second party (plaintiff) shall continue for the life of each mortgage made and sold by the second party (plaintiff) for the first party (defendant) or during the existence of the respective servicing contracts of such mortgages under which the first party (defendant) has or will collect such servicing charges in excess of one-half of one percent."

The contract provided that the appellant [defendant below] should execute servicing agreements when requested to do so by Sadowski, who was to receive and retain the processing fees for the applications and mortgages and was to repay General Discount Corporation all expenses incurred by it on pending applications as the mortgages were consummated.

Sadowski made strong financial commitments to appellant. He agreed to pay the corporation fees for each mortgage application, according to designated classifications, in a total sum of not less than $750 during each month. The corporation reserved the right to cancel the contract upon thirty days' notice in the event that Sadowski during any three-month period should fail to produce fees averaging at least $1,500 per month. To secure his obligations under the contract, appellee deposited $2,500 in cash with appellant and delivered to it his promissory note for $4,250.

The contract obligated Sadowski to bear all expenses of operation, including rent to appellant for office space on its premises. Later, by expanding his offices to another floor, he increased the number of his employees, a number of appellant's em-

ployees being employed by him, and increased his overhead to monthly expenses ranging somewhere between $3,500 and $4,500. During the two-year effective period of the contract which terminated on October 16, 1938, appellee procured more than 1,300 mortgages, aggregating in amount some $6,000,000. There is no dispute concerning his compliance with the terms of his undertaking.

Under the contract, the responsibility of appellant was not very heavy. The corporation merely caused the necessary mortgage papers to be signed and processed when presented to it by appellee and executed the servicing contracts when requested by him so to do. Appellant disbursed the mortgage moneys and serviced the mortgages in compliance with the terms of the servicing contract. The compensation received by appellant embraced fees paid to it by appellee in accordance with the contract; servicing fees; and other profits incident to the operation of the mortgage business, including commissions from the writing of fire and other insurance.

It appears from the stipulation of undisputed facts in the record that, before it entered into the contract with Sadowski, the appellant company had sustained net losses of more than $20,000 from the operation of its F.H.A. mortgage business; its situation was serious and its license in jeopardy; and that it was willing to sell its whole business for $6,000, provided it would be relieved from liability on mortgage applications on which it had made commitments but could not close.

At a directors' meeting on October 23, 1936, the proposed contract between the company and Sadowski was discussed and, as shown on the minutes, it was "Resolved that the officers of the corporation be authorized to execute a contract between this corporation and F. P. Sadowski upon written approval of counsel of the corporation." This is plain and direct authorization of the officers to execute the contract which the company's attorney not only approved, but prepared.

We turn now to that portion of the district court's opinion in which the evidence upon the vital issue of fact is weighed;

and, from our examination of the whole record, we certainly cannot say that the findings of fact of the district court are clearly erroneous. Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. Indeed, the findings are abundantly supported by substantial evidence.

The district court found that the president and the vice-president and general counsel of the appellant company were authorized by its board of directors to negotiate the contract with appellee. It was pointed out that the president is a business man enjoying the high regard of the community, and that the general counsel, "who drafted the contract", is now a senior member of a distinguished law firm.

The district judge said: "The court has had the benefit of the personal appearance and the testimony of all of those who were identified with the defendant at the time of the negotiations leading to the execution of the contract, except that of one director, a transcript of whose testimony given in the state court was received in evidence by agreement of counsel. The court was most favorably impressed with the testimony of the plaintiff, the president, and the vice-president and general counsel of the defendant, all of whom testified in the most emphatic and direct manner that it was never contemplated, either by the plaintiff or the defendant, that the defendant would be relieved of paying the service fees required to be paid by it to the plaintiff under paragraph seventh, at the end of the period named in paragraph first, and that it was the intention of the defendant that paragraph seventh should read to give effect to the claim of the plaintiff."

The court continued: "Without intending in any way to assail the integrity of the witnesses for the defendant, it may be said that their testimony was largely to the effect that they did not remember the statements made by the plaintiff's witnesses as to what actually took place. The overwhelming evidence of the witnesses in favor of the plaintiff's claim is sufficient to justify the granting of the relief asked for, and an examination of the practical results of the operation of the business

under contract fortifies the claim of the plaintiff."

After appellant had terminated the contract with appellee at the end of the two-year period, it refused to recognize that appellee had any interest for the duration of the mortgages in servicing fees in excess of one-half of one percent. Whereupon, Sadowski instituted an action at law in a Michigan state court to recover the compensation due him under his interpretation of the seventh paragraph of the contract. The Supreme Court of Michigan, with Justices Butzel and McAllister dissenting, affirmed a judgment against him, holding that the seventh section read in connection with the rest of the contract "is not ambiguous and the definite contract period of two years controls the rights of the parties and, in the absence of fraud or mistake, excludes prior, contemporaneous and subsequent talks as to its scope and purport." Sadowski v. General Discount Corp., 295 Mich. 340, 342, 294 N.W. 703, 704.

■ Appellant insists that where there is no dispute as to the provisions of a contract adopted by the parties, but merely a controversy as to the legal effect of a provision, equity will not grant relief by reformation of the contract. In reply, appellee urges that where a mistake in drafting a contract is, as in the instant case, not in the actual agreement of the parties but in using or omitting from the contract terms which give it a legal effect not intended by the parties, equity should and will grant relief.

■ The appellant contends further that in an action at law for specific construction of a contract, which a plaintiff might have established but was unsuccessful in doing so, he may not resort to equity in an effort to establish his contention by reformation of the contract. The appellee responds that under Michigan practice and procedure, where "legal and equitable causes of action shall not be joined" and reformation of a contract may be had only on the chancery side of the court, the plaintiff may maintain a suit in equity for reformation after having been denied a recovery of damages for breach in an action at law on the contract as written. We think, as did the district court, that in the circumstances of this case the position of the appellee is correct upon both propositions.

■ The appellee testified unequivocally that it was thoroughly understood between him and the representatives of appellant, duly designated to make the contract, that the excess servicing fees over one-half of one percent were to be paid to him for the full life of the mortgages sold by him during the two-year period for which he had the exclusive right to sell them for appellant. He was fully corroborated in this by the testimony of Klingensmith, president of appellant corporation, and by Fischer, vice-president and attorney for appellant and draftsman of the contract which was executed. Even after the decision of the Supreme Court of Michigan was promulgated, Fischer considered that the language employed in the contract carried out that understanding. But he was positive that the actual agreement between the parties was that the payment to appellee of the excess servicing fees would continue monthly for the life of the mortgages or the servicing of them. He testified emphatically: "There is no question about it in my mind and there was none in the company's mind." It should be observed that, in its opinion declaring the contract unambiguous, the Supreme Court of Michigan excluded consideration of parol evidence interpretative of the scope and purport of the contract. Thus, the court did not hold that a contract may not be reformed if a mistake of fact be shown. None of the evidence pertaining to mistake in the action at law before it was even considered by the majority of the Michigan Supreme Court.

We agree with the district court that the Supreme Court of Michigan obviously based its decision upon the literal meaning of the words used in paragraph seven in an action at law on the contract, as written; and that the parol evidence there proffered by Sadowski was to explain the words of the seventh paragraph, as written, and not to establish a mistake in the

choice of language used to express the real intention of the parties, while this suit in equity in the United States Court is to reform the contract so that it will, in fact, express that intention. In Sullivan v. Ross' Estate, 113 Mich. 311, 71 N.W. 634, 76 N.W. 309, it was held that while it is true that one is bound by his election between two inconsistent remedies, if he has ·a meritorious claim but mistakes his remedy by attempting to enforce it in an inappropriate action in which no recovery can be had, he is not thereby precluded from a resort to his appropriate remedy.

As the district court points out, while in Michigan a plaintiff may join in one action at law or in equity as many causes of action as he may have against a defendant, legal and equitable causes of action shall not be joined. Comp.Laws Mich. 1948, § 608.1, Michigan Statutes Annotated, Vol. 20, sec. 27.591.

In Scott v. Grow, 301 Mich. 226, ˆ238, 239, 240, 3 N.W.2d 254, 259, 141 A.L.R. 819, it was held that courts of law have no jurisdiction to reform instruments in writing, such jurisdiction being vested exclusively in courts of equity. Mr. Justice Starr quoted from the earlier case of Bush v. Merriman, 87 Mich. 260, 268, 269, 49 N.W. 567: "In this state the distinction between law and equity, as applied to remedies, has been kept up. The courts of law have no jurisdiction to reform written agreements. This jurisdiction is exclusively vested in courts of equity, and it has long been settled that if, by reason of fraud, mistake, or accident or surprise, an instrument does not express the true intent and meaning of the parties, equity will upon satisfactory evidence reform it. * * * The rules of evidence at law and equity are the same, but when the question is not what the terms of the written contract are, but whether the contract as written was entered into or whether it was obtained by fraud, or is founded in surprise, accident, or mistake, these subjects of inquiry are open to parol testimony, irrespective of what the writing contains."

The rule in Michigan is not unique. The authoritative text writer Pomeroy has thus expressed it: "If a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief * * * although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing." Pomeroy Equity Jurisprudence, sec. 845. This expression is quoted in Baird v. Erie Railroad Company, 210 N.Y. 225, 232, 104 N.E. 614; and the declaration made that the authorities are uniform in stating that equity will reform a written instrument in which the words used differ in legal effect from the contract actually made and established by satisfactory evidence.

Appellant argues that the effect of another statute, Comp.Laws Mich.1948, § 611.2, Michigan Statutes Annotated, Vol. 20, section 27.652, shuts off the present action, in that whenever it appears that an action commenced on the law side of the court should have been brought in equity, it "shall be forthwith transferred to the proper side, and be there proceeded with, with only such alteration in the pleadings as shall be essential." In the state court, Sadowski was not seeking reformation, and he had the right to bring his action at law for breach of the contract, as written. Moreover, Fischer, appellant's attorney who drafted the contract, construed the writing as having carried out the intention of the parties that Sadowski was entitled to receive the excess servicing charges over one-half of one percent for the duration of the mortgages. We find no requirement in the statute that Sadowski should be barred in equity because he did not abandon an action at law on the contract in which judgment was rendered against him. We agree with the trial judge that the statute relates only to cases in which a transfer from one side of the court to the other does not essentially change the cause of action, but makes possible the adjudication of the asserted cause of action on the appropriate side of the court. See Lake Superior Brass Foundry Company v. Houghton Circuit Judge, 209 Mich. 380, 176 N.W. 409, holding that the making of an order

548

transferring a cause from the law to the equity side of the court is not discretionary.

The argument that the judgment rendered against Sadowski in the state court action at law forecloses his right to maintain this suit in equity for reformation must, both upon reason and upon authority, be rejected. In Nash v. Morrell, 171 Mich. 658, 661, 137 N.W. 516, it was held that where claims or defenses are of a purely equitable character and therefore not properly cognizable at law, a judgment at law cannot be pleaded as *res adjudicata* in a suit in equity brought to establish equitable rights. See also Bush v. Merriman, 87 Mich. 260, 49 N.W. 567, supra. Cf. Scott v. Grow, 301 Mich. 226, 3 N.W.2d 254, supra.

It would seem that, following the highest authority, this court, in Leithauser v. Hartford Fire Ins. Co., 6 Cir., 124 F.2d 117, has already put the matter at rest. There, we pointed out that in Northern Assurance Company of London v. Grand View Building Association, 203 U.S. 106, 27 S.Ct. 27, 51 L.Ed. 109, the Supreme Court affirmed a decree reforming a policy of insurance and awarding recovery thereon, after the insured had failed in an action at law upon the policy. Our holding was that in a suit in equity for reformation of and recovery upon a fire insurance policy upon which this court had denied recovery in an action at law, the defense of *res adjudicata* would not stand, inasmuch as the causes of action are not the same; and a reformation of the contract was decreed where the evidence established that it had been the mutual intention of the parties to effect a contract of insurance upon an elevator erected upon leased ground, despite the provision of the insurance policy rendering it void unless the insured's interest was that of sole and unconditional ownership in fee.

In Northern Assurance Company of London v. Grand View Building Association, 203 U.S. 106, 27 S.Ct. 27, supra, the Supreme Court made a clear-cut holding that in an action at law an adjudication on a policy of insurance that the insured cannot recover on the policy as it then stood is not an adjudication that the contract cannot be reformed, even though the plaintiff in the former action expressed on the record its reliance upon the facts upon which it stood in the suit in equity brought to reform the policy. This decision constitutes a complete answer to the argument advanced by appellant. See also Springfield Fire & Marine Ins. Co. of Springfield, Mass. v. Martin, 5 Cir., 77 F. 2d 492.

The authorities cited in the brief of the attorneys for appellant have been carefully examined, but none is found to gainsay the conclusion correctly reached by the district court.

We find no error in the final judgment of the district court denying the claim of appellee for servicing fees in connection with the eighty-seven mortgages on which appellant waived servicing fees paid by the several mortgagors. Accordingly, the cross-appeal of appellee is dismissed.

The judgment and decree of the district court is in all respects affirmed.