VARTKES TADIAN, Plaintiff, *v.* CONTINENTAL FORWARDING, INC., et al., Defendants.

CONTINENTAL FORWARDING, INC., Third-Party Plaintiff-Respondent, *v.* GUARANTY NATIONAL INSURANCE COMPANY, Third-Party Defendant-Appellant, and SOBEL AFFILIATES, INC., Third-Party Defendant.

First Department, March 2, 1970.

*Edward Cherney* of counsel (*Harvey P. Rosenberg* with him on the brief; *Friedlander, Gaines, Ruttenberg & Goetz,* attorneys), for third-party defendant-appellant.

*Joel S. Sankel* of counsel (*Martin C. Licht* with him on the brief), for third-party plaintiff-respondent.

McGIVERN, J. This is an appeal from a unanimous affirmance by the Appellate Term of a judgment of the Civil Court of the City of New York, New York County, in favor of the insured.

The insured (and third-party plaintiff) is the Continental Forwarding, Inc., and its business is, as its name indicates, that of freight forwarding. The defendant, Guaranty National Insurance Company, had issued to Continental an insurance

policy. The purpose of the policy was to insure Continental against auto theft '' occurring while such automobile or other property is in the *custody* of the insured for safekeeping, storage, service or repair (1) at a location stated in this endorsement *or while temporarily removed therefrom in the ordinary course of the insured's business,* or (2) away from the premises if the insured is attending such automobile or property '' (emphasis supplied).

A car, which Continental had undertaken to forward, was stolen while parked on a city street in Newark, New Jersey. The car had been locked and the key retained by the driver. Yet it was stolen. The insured, Continental, having paid premiums against just such a contingency, not unnaturally, seeks recovery under the policy.

In considering the facts (found in detail in minority opinion) and the policy, '' account must be taken of ' the reasonable expectation and purpose of the ordinary business man ' in making the contract. (*Bird* v. *St. Paul Fire & Marine Ins. Co.,* 224 N. Y. 47, 51.) The words of the policy are to be read in context, the language construed fairly and reasonably, with an eye to the object and purpose sought to be accomplished by the writing.'' (*Harris* v. *Allstate Ins. Co.,* 309 N. Y. 72, 75–76.) Known to the insurer was the nature of the insured's business, the fact it operated from an office and not a garage or a storage place, and that it employed drivers constantly engaged in moving autos from place to place. Inevitably, part of such a business is the leaving of an auto unattended, somewhere, sometime, in the ordinary course of its known business. There have been policies requiring an attendant on the vehicle before liability attaches. (See *Royce Furs* v. *Home Ins. Co.,* 30 A D 2d 238.) If the defendant had that exaction in contemplation, by the addition of a single phrase, it could have protected itself against precisely what happened here. But, it did not do so.

Nor can I accept the thesis of the dissenters herein that '' merely having charge of something is far different from having custody.'' To the contrary spoke the Court of Appeals in *New York Auction Co.* v. *United States Fid. & Guar. Co.,* 260 N. Y. 186, 189: '' Custodian is one having custody and *custody is to have* watch, care or *charge of something* [emphasis supplied]. This is the English language according to the dictionary (Funk & Wagnalls).'' (See, also, 25 C. J. S., Custody, p. 89.) Such '' care '' or '' custody '' may be '' actual or constructive.'' (Webster's New International Dictionary, 2d ed., unabridged.) As was observed in *Klock* v. *Allstate Ins. Co.* (34 Misc 2d 990, 993), a person is in charge of a thing when '' he has the right

to exercise dominion or control over it." Relating this to the instant case: If the car at the time it was stolen was not in the control and custody of the insured, in whose control and custody was it? It had not been abandoned.

To say that an insurance company should not pay when a car is stolen because thieves are abroad in our haggard cities and that they stalk our streets, is little short of absurd. It is just because of the prevalent and recognized risk of auto thievery in our present day urban society that people seek such insurance. This plaintiff had it. Its car was stolen, under the conditions of the policy. Ergo: the defendant is liable.

The determination of the Appellate Term should be affirmed, with costs and disbursements.

TILZER, J. (dissenting). The plaintiff, a member of the armed forces, purchased a Volkswagen in England. He arranged with Continental Forwarding Inc. (hereafter " Continental "), a New York firm in the business of transporting automobiles, to clear the car through customs in Manhattan and deliver it to Sober Transporting Co. (hereafter " Sober ") in Linden, New Jersey, whence it would be shipped to plaintiff in Michigan.

On October 19, 1964 the car was removed from a Manhattan pier by Continental, the latter paying the customs charge. The car was then parked in a New York City public garage by Continental at a charge of $2 per day. Continental on October 19 telephoned Sober in New Jersey and advised them that it had incurred expenses of $98.04 which it must receive before it released the car to Sober. Sober replied that it did not have the ready cash and would call Continental when it was ready to pay the bill. On October 22, 1964, a Thursday, Continental's employee, McElwain, not having heard from Sober " and since we were paying two dollars a day for parking for which we did not charge," drove the automobile over to New Jersey to the terminus of the Pulaski Skyway at the Newark Airport. McElwain then telephoned Sober and was told that it did not have the funds for the charges due and to hold up delivery of the car. McElwain then parked the vehicle on a street in Newark, in the area known as the Newark piers, consisting primarily of warehouses and storage sheds. He locked the car and then went either to his home in Pompton Lakes, New Jersey, or back to his office in New York City by public transportation.

The next day, Friday, Sober called McElwain and asked him to bring the car since they now had the money to pay the charge. McElwain said that it was too late in the day and that it could be done on Monday. The following Monday, October 26, 1964,

McElwain went back to Newark, but the car was gone. He made a written report of the theft to the Newark police on the following Friday.

On the foregoing facts the trial court found that Continental's act of parking the vehicle near the Newark Airport for the period of time involved was negligent, and that such negligence was the proximate cause of the theft. Judgment was granted to plaintiff against Continental. The theft, nevertheless, the court concluded, occurred while the vehicle was in the " custody of the insured " within the meaning of a policy of automobile physical damage insurance issued by Guaranty National Insurance Company (hereafter " Guaranty ") to Continental, containing a garage keeper's liability endorsement. Accordingly, judgment over against Guaranty was granted to Continental on its third-party complaint for indemnification. The appeal is confined to the dispute between Continental and Guaranty.

The garage keeper's liability endorsement which the trial court found covered the loss of the Volkswagen reads as follows: " The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of * * * loss to an automobile caused by theft of the entire automobile * * * occurring while such automobile * * * is in the custody of the insured for safekeeping, storage, service or repair (1) at a location stated in this endorsement or while temporarily removed therefrom in the ordinary course of the insured's business, or (2) away from the premises if the insured is attending such automobile ". Continental concedes that when the vehicle was stolen, it was not attended by it. It relies, as did the trial court, upon the " custody " clause of the endorsement: that the " vehicle was in the ' custody of the insured ' ' while temporarily removed ' from the ' location stated ' ' in the ordinary course of the insured's business '." (Opinion of the Civil Court.)

The policy, obviously, was not intended to provide indemnity against any and all loss by theft, but only a loss occurring while the automobile was in the custody of the insured (1) at the location stated in the policy, (2) while temporarily removed from the premises in the course of the insured's business or (3) while away from the premises if the insured was in attendance upon the vehicle. While the first two did not impose the condition of attendance upon the insured automobile, that is, that the vehicle be in the personal care of the insured, they did require that the property be in the custody of the insured. Custody, as that term was used in the policy, did not mean that because the insured was charged with the task of transporting the

vehicle, it therefore had custody of the property. Merely having charge of something is far different from having custody. Taking into consideration the purpose of the policy as well as the acts to be done by the insured in delivering the vehicle, custody required that the insured keep or guard the insured automobile. The insured, Continental, failed in its duty in this regard. It failed to protect and preserve the property of the plaintiff when it left his car for a period of four days on a remote public street in a city and State removed from that where it did business.

It may not be said, moreover, that the insured had " custody " of the auto during the time it was parked on the street in Newark because its employee had locked the vehicle and retained the key. The trial court found, as we have noted, that parking a vehicle for the period involved was negligent and that the defendant insured's negligence was "a proximate cause of the theft." The insured, to save the $2 a day parking fee which it had paid while the vehicle was in New York City, " for which we did not charge," and before receiving word from its New Jersey consignee that it had the cash to pay for its charges, drove the auto to Newark and simply left it on a public street. While it may not have abandoned the auto, it certainly surrendered its responsibility for the safety of the property entrusted to its care. One leaving an obviously unguarded automobile on the streets of a big city runs the great risk that his car will either be stolen or stripped to its frame in a matter of hours.* The definite conclusion we reach is that the vehicle was not in Continental's custody at the time of the loss. The judgment of the Civil Court and order of the Appellate Term should be reversed, and the third-party complaint should be dismissed.

---

* Auto thefts in the United States totaled 399,000 in 1963. In the City of Newark alone, there were 4,662 reports of auto theft in the year 1966. (Britannica, Book of the Year, 1965, p. 274; World Almanac, 1968, p. 903.)

In an experiment conducted in 1969 by a Stanford University psychologist, Philip Zimbardo, an automobile was parked on a Friday afternoon alongside the curb in a middle-class residential neighborhood in New York City. The license plates were removed and the hood was opened slightly to make the car look as if it had been stolen or left alone while its owner went for help. Within 10 minutes the car had its first visitors. "By the end of the first twenty-six hours, a steady parade of vandals had removed the battery, radiator, air cleaner, radio antenna, windshield wipers, right-hand chrome strip, hubcaps, a set of jumper cables, a gas can, a can of car wax, and the left rear tire (the other tires were too worn to be interesting)." The tentative conclusion of Mr. Zimbardo was that "in offices, schools and streets, a big-city feeling of personal anonymity encourages destructive behavior," (*Time, Inc.,* February 28, 1969, pp. 62–65.)

Nunez and Macken, JJ., concur with McGivern, J.; Tilzer, J., dissents in opinion in which Stevens, P. J., concurs.

Determination entered on March 17, 1969, affirmed, with $50 costs and disbursements to the respondent.