SAVINGS INVESTMENT & TRUST COMPANY AND LOUISE DURAND MORRIS, EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF NELSON C. DURAND, DECEASED, PLAINTIFFS, v. THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY, HARTFORD, CONNECTICUT, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided December 17, 1951.

*Mr. C. Wallace Vail,* attorney for plaintiffs.

*Messrs. McCarter, English & Studer (Mr. Conover English* appearing), attorneys for defendant. The Connecticut Mutual Life Insurance Company.

*Mr. Edward C. Hillis,* guardian *ad litem.*

*Mr. Alfred C. Clapp,* attorney for defendants, Audrey Nye Bensley and Deborah Nye Eppler.

· STEIN, J. S. C. Decedent, Nelson C. Durand, died on July 19, 1949, leaving a will under which he appointed plaintiffs as his executors, who duly qualified.

At the time of his death, decedent left the following policies of life insurance issued by the defendant, The Connecticut Mutual Life Insurance Company, hereinafter called the "insurance company":

| Policy Number | Amount | Date |
|---|---|---|
| 612,733 | · $10,000 | October 18, 1927 |
| 615,092 | $15,000 | October 18, 1927 |
| 919,736 | $ 3,000 | December 28, 1936. |

By the terms of these policies, the proceeds were made payable to Elizabeth P. Durand, wife of the decedent, if she survived him, and if not, then to his executors, administrators or assigns.

As a result of negotiations begun in 1936 with the insurance company to effect changes in the policies by endorsements, decedent, on or about February 16, 1937, by endorsement attached to each of the foregoing policies, relinquished his right to thereafter exercise any of the rights, privileges or options in each of said policies, and all of these rights, during his lifetime, were vested in his wife, and after her death, in his daughter, Louise Durand Morris. Decedent's wife predeceased him on December 2, 1947, without exercising any of these rights, and his daughter did not exercise any of these rights before decedent's death.

By virtue of the terms of said policies, plaintiffs became entitled to the proceeds thereof, and the insurance company

having refused to make payment, plaintiffs instituted this action at law against said insurance company to recover the proceeds of said policies.

The insurance company thereupon filed an answer, counterclaim and cross-claim wherein it alleged that the proceeds of these policies were payable to it as "trustee," to be held by it as such trustee under the terms of an interest income trust agreement, dated March 9, 1937, for the benefit of the decedent's wife during her lifetime, and if she predeceased him, for the benefit of his daughter, Louise Durand Morris, and two named grandchildren, Audrey Nye and Debora Nye, and that the relinquishments mentioned in paragraph 4 hereof were, in fact, made subsequent to the interest income trust agreement, and that the dating thereof prior to the dating of said interest income trust agreement was a mistake made by the insurance company, and that because of the mistake in the dating of the endorsements of relinquishment and of the interest income trust agreement, they should be reformed to give effect first to the interest income trust agreement and second to the relinquishments. The insurance company in its cross-claim brought in as parties defendant the beneficiaries under the interest income trust agreement. The beneficiaries have filed an answer to the cross-claim joining in the prayer for reformation.

By the pretrial order entered in the above matter, the issue before the court was stated as follows: Should the insurance company pay plaintiffs the principal amounts due under each of the above policies according to the terms of the policies and the last dated agreements, or should each of the above policies be reformed as prayed in defendant's counterclaim and cross-claim to give effect to the intention of the parties; that the interest income trust agreement be reformed as to its date; and that the endorsements of February 16, 1937, be reformed as to their dates and date of endorsement, so that the interest income trust agreement shall be so dated as to become effective first and the endorsements of Febru-

ary 16, 1937, shall be so dated and endorsed as to become effective thereafter.

The sole issue therefore in this case is whether, on the evidence adduced, reformation should be granted.

In the fall and winter of 1936-37, the insured consulted with Charles J. Zimmerman, at that time engaged in estate consulting and planning in insurance matters and also general agent of the insurance company at its Newark office, as his insurance advisor, with respect to certain changes in his policies. The insured determined and expressed the desire to so modify his policies by the execution of a so-called income agreement so as to set up a trust of the proceeds of the policies and for the income therefrom to be paid to named beneficiaries monthly. As part of this arrangement, he determined to so modify the policies by the execution of a so-called request so as to extend to the named beneficiaries certain privileges and rights during his lifetime. Insured's desires and intentions were submitted to the insurance company. The company agreed to them, and the home office proceeded to draw the necessary papers, and so drawn the home office sent them to Mr. Zimmerman at Newark, with instructions as to their execution and dating. Both the income agreement and the request were thereupon signed by the insured, in that order. The income agreement, as directed by the home office, was not dated. The request as to each policy was dated. I am satisfied that it was the intention of the parties that the income agreement, on being received at the home office, should be dated ahead of, and become effective ahead of, the requests and that the requests should be dated and become effective thereafter.

Through an error and mistake committed in the home office, the mutual agreement and understanding of the parties was not carried out. The income agreement was inadvertently dated after the request, contrary to the understanding of the parties, and so the intention of the parties with respect to the changes in the insurance policies was not carried out, and the income agreement, which I find was the insured's

chief concern, is not now effective and the policies, by their terms, are payable to the executors.

The income agreement changed the method of payment so as to create a trust of the proceeds of the policies, the income of the trust to be paid to the wife for life; after her death, to the daughter, for life, and after her death, the principal to be divided among certain grandchildren.

The requests attached to each policy vested in the beneficiaries named in the income agreement the power to exercise all the rights, privileges and options in the contracts "during my lifetime," and provided that the insured waived and relinquished the right to exercise any of the rights, privileges and options granted by the contract.

The defendant's counterclaim and cross-claim seek the reformation of the contract to make it conform to the agreement and intention of the parties. All of the parties in suit, except the executors, in their answers join in the application. Louise Durand Morris, who is one of the executors but who was made a defendant personally in the cross-claim, has defaulted and a judgment by default has been entered against her. The relief of reformation here sought by counterclaim and cross-claim is in accordance with our present day practice and procedure. *Massari v. Einsiedler,* 6 *N. J.* 303, 78 *A. 2d* 572 (1951). In that case, the Supreme Court discusses the character of pleadings which constitute a defense under our present rules and holds that mistake or fraud, such as would lead to a reformation of a written instrument, are equitable defenses, and that such equitable defenses seeking equitable relief may be set up by way of counterclaim or cross-claim in the original action, pursuant to *Rules* 3:12-2, 3:13-1 and 3:14-1.

That contracts where there is a mutual mistake common to both parties may be reformed in equity is so well settled in our jurisprudence that it seems unnecessary to cite but few cases.

Plaintiffs' prayer is that the court reform the income-trust agreement and the request-assignment so that the former

will predate the latter. Equity, in an effort to effectuate the intent of contracting parties, will exercise its power to reform instruments where there has been a mutual mistake by the parties. *Cummins v. Bulgin,* 37 *N. J. Eq.* 476 (*Ch.* 1883).

The insured, Nelson C. Durand, intended and understood that the income-trust agreement that he had executed was to be dated so as to make it effective. The company intended and supposed that it had so dated the papers. The fact is that a ministerial or clerical error in wrongly dating that agreement occurred.

"Reformation is the means by which the instrument is made to conform to the intention of the parties. It is applicable to cases of mistake and fraud. If there is mistake on one side and fraud on the other, reformation is the remedy. Mistake exists when a person, under some erroneous conviction of law or fact, does, or omits to do, some act which but for the erroneous conviction he would not have done or omitted. *Cummins v. Bulgin,* 37 *N. J. Eq.* 476. It may arise either from unconsciousness, ignorance, forgetfulness, imposition or misplaced confidence. Where is arises from imposition or misplaced confidence, relief may be had on the ground of fraud. Where it arises from unconsciousness, ignorance or forgetfulness, no fraud exists and redress must be on the basis of mistake. The mistake must be one that is mutual, material and not induced by negligence. * * *" *Santamaria v. Shell Eastern Petroleum Products, Inc.,* 116 *N. J. Eq.* 26, 29, 172 *A.* 339 (*Ch.* 1934).

In *Seymour v. German-American Ins. Co.,* 83 *N. J. Eq.* 37, 90 *A.* 674 (*Ch.* 1914), affirmed, *Seymour v. German Ins. Co.,* 84 *N. J. Eq.* 206, 93 *A.* 1086 (*E. & A.* 1915), Vice-Chancellor Stevens said:

"* * * The facts appear to me to show mutual mistake—mistake by the company's agent in stamping the objectionable matter on the printed policy—and mistake by the complainant, who supposed that the policy was like the one which had immediately preceded it and who was guilty of no more carelessness than was Lloyd when he took his deed from Hulick under the supposition that it conformed to the prior written contract. *Lloyd v. Hulick,* 69 *N. J. Eq.* 784."

Judgment in accordance with the foregoing.