415 P.2d 712

Nicolas BILBAO and Martina Williams, and Martina Williams as Trustee for and in behalf of Mary Rose Nelson, James R. Nelson, Carmen Nelson, Anita Nelson, Juanita Nelson, Minors, Plaintiffs-Respondents,

v.

John E. KRETTINGER and Edna I. Krettinger, husband and wife, Defendants-Appellants.

No. 9670.

Supreme Court of Idaho.

June 16, 1966.

Frank F. Kibler, Nampa, Wayne P. Fuller, Caldwell, for appellant.

Cosho & Humphrey, Boise, for respondent.

TAYLOR, Justice.

In 1959, Nicolas Bilbao, one of the plaintiffs (respondents), owned the "Owyhee Tavern" in Marsing, Idaho. Bilbao had been leasing the premises and fixtures and the business had been operated by his lessee. In connection with the business and the premises Bilbao and his lessee held retail beer and liquor-by-the-drink licenses. Bilbao, intending to leave the country for a visit to Spain, executed a power of attorney giving his son-in-law Ramon Ysursa authority to operate, manage and lease the business and premises, and directing Ysursa to hold and distribute the proceeds from the operation of the tavern for the benefit of Bilbao's grandchildren.

To facilitate performance of his duties under the power of attorney, Ysursa had a lease prepared and executed for the leasing of the premises by Bilbao to himself as lessee. Early in January, 1960, Ysursa extended the lease to December 31, 1961, and assigned it to Lee and Ethel Dragoo, and received from them their written acceptance. At the same time the Dragoos executed and delivered to Ysursa a transfer of all liquor and beer licenses from themselves back to Ysursa. The transfer or assignment of the liquor and beer licenses back to the lessor was intended to preserve such license for the benefit of the premises where the business was carried on, and to prevent the loss of such licenses, during the term or at the expiration thereof, upon vacation of the premises by the lessees.

In June, 1960, the Dragoos assigned the lease to Viola Scroggie and the latter executed a transfer of the liquor and beer licenses to Mr. Ysursa. In January, 1961, Viola Scroggie was released by Ysursa from the obligation of her lease and she at that time again executed a transfer of liquor and beer licenses to Mr. Ysursa. Ysursa then assigned the lease to Walter and Barbara Love and received from them a transfer to himself of all liquor and beer licenses.

At that time Mr. Ysursa was advised by the State Department of Law Enforcement that the state would not approve of the operation of the business and the retailing of liquor by the drink by a lessee who had executed an unconditional transfer of his liquor license. To meet this objection to the method which had been employed theretofore to prevent the loss of licenses to the premises, Mr. Ysursa's attorney added to the transfer of

such licenses by the Loves to Ysursa, the following proviso:

"Provided, however, that this transfer shall not take effect until and unless the undersigned is declared to be in default by the said Ramon Ysursa under the terms of said lease."

In July, 1961, the Loves assigned the lease to Charlie Sword. Ysursa executed a consent to the assignment and an agreement to reduce the rent from $100 to $50 per month, and received an acceptance of the assignment from Sword. Sword executed a transfer of the liquor and beer licenses back to Ysursa. This transfer contained the same proviso as that written in the transfer made by the Loves.

In November, 1961, Sword assigned the lease to defendants (appellants) herein, and defendants executed a transfer to Ysursa of the liquor and beer licenses, which also contained the same proviso as was written into the Love and Sword transfers.

In 1962, after Bilbao's return to Marsing, Ysursa desiring to be relieved from the management of the property and business, Bilbao obtained the consent of plaintiff (respondent) Martina Williams to act as his attorney in the management of the business and premises. In September of that year defendants executed a transfer of all liquor and beer licenses from themselves to Martina Williams. This transfer also contained the same proviso as in the Love and Sword transfers. Bilbao executed a consent to the assignment and an extension of the lease to December 31, 1962.

When defendants became the successors to Charlie Sword, they paid him $1200 for the business, which included fees paid for beer and liquor licenses for the remainder of the term, as well as rent for that period. Later and before the end of the term, Martina Williams informed defendants that at the end of their term they could renew the lease, but the rent would be increased to $100 per month.

At the end of the term they vacated the premises and rented another property across the street at $50 per month. They then applied for renewal of the state liquor license and received such license in their own name for use in their new establishment, thus depriving the Owyhee Tavern of its license to sell liquor by the drink.

Plaintiffs brought this action to reform the transfer of the liquor license executed by defendants to make it conform to the agreement of the parties, that, upon termination of the lease, the liquor license should remain as an asset of the Owyhee Tavern and its owner.

The trial court found:

"That prior to the time the lease in evidence as plaintiffs' Exhibit A, as supplemented, amended and extended, was assigned to the defendants, it was the understanding of all parties prior to the defendants, that the liquor and beer licenses being used upon said leased premises, would stay with the premises at the termination of such lease.

"That on or about the 16th day of November, 1961, when said lease as supplemented and extended was assigned to the defendants, and plaintiffs' Exhibits T, U and V executed, it was explained to the defendants that said liquor and beer licenses would not [sic] stay with the leased premises in any event, beyond the term of the lease; and further, when said documents of assignment were redrafted and supplemented in the year 1962, and on or about the 24th day of September, 1962, it was the mutual understanding of all of the parties to such documents (Nicolas Bilbao, by and through his attorney in fact, Martina Williams), that said licenses would stay with the leased premises and that upon termination of the lease, the same would be assigned and transferred to Martina Williams, and this fact was further explained at the time to the defendants, who did or reasonably should have understood the same."

The court also found that the attorneys, who prepared all of the documents hereinbefore mentioned, thought they had by such instruments provided for the retention of the licenses by the landlord; that such retention was a legal requirement under the circumstances; and that such attorneys did in fact explain that requirement to defendants.

The court further found that the transfers of the licenses by the respective lessees to the landlord:

"* * * failed to express the real agreement or transaction between the parties to said documents by reason of their mutual mistake, or by mistake on one side and inequitable condition on the other, and further by reason of scrivener's error on the part of the persons drafting said instruments, the real agreement and understanding of the parties being that at the termination of said lease, as supplemented and extended, all liquor and beer licenses would be transferred and assigned to the Lessor's trustee and attorney in fact, the same being Martina Williams, at the commencement of this action, and according to the lease documents executed."

The court also found that the purchase price paid by defendants to Charlie Sword was for: the balance of the lease term; the pro rata portion of license fees paid for the unexpired term; the inventory of stock in trade; "and did not include any payment for the liquor or beer licenses as a valuable property right."

The court concluded that it would be unconscionable and inequitable to deny plaintiffs the equitable relief sought by them, and that the transfers of Idaho State Liquor License executed by them in favor of Ramon Ysursa and Martina Williams should be reformed to express the real agreement of the parties, i. e. that upon termination of the lease (as well as upon default thereunder), the state of Idaho retail liquor license used in connec-tion with the leased premises, would be transferred and assigned to Martina Williams, acting for the landlord.

Judgment was entered in favor of plaintiffs directing defendants to transfer the state liquor license to plaintiffs and to do all within their power to effectuate such transfer, and restraining them from any action which would interfere with or prevent Martina Williams from procuring transfer of the license by the state, or the renewal of the license issued by the village of Marsing. The judgment required plaintiffs to do equity by reimbursing defendants for the pro rata part of any license fees paid by them to the state of Idaho or to the village of Marsing, apportionable to the period following the transfer of such license by defendants to Martina Williams, as ordered.

On this appeal defendants contend that the court erred in reforming the contract involved because: (a) the mutual mistake, if any, was one of law, not of fact; (b) the mistake, if any, was unilateral, not mutual; (c) the mistake, if any, was the result of culpable negligence on the part of plaintiffs; and (d) the evidence does not support the court's conclusion that the contract should be reformed.

■ Defendants cite prior decisions by the court for the propositions that: (1) where a contract is clear and unambiguous the meaning must be determined from its contents alone; and (2) a contract must be given effect according to its terms and the court cannot substitute nor write a new contract for the parties. Such decisions are not pertinent to the present issue. A contract may be clear and unambiguous as far as it goes, and yet may not express the true agreement of the parties, by reason of mutual mistake. In reforming such a contract the court does not substitute nor write a new contract. What the court does in such a case is to give effect to the contract which the parties did in fact make, but which by reason of mistake was not expressed in the writing executed by them.

"As a general rule, where parties to a transaction have an identical intention as to the terms to be embodied in a proposed agreement or in the extent of property to be conveyed by a deed or other instrument, and the writing executed by them is materially at variance with such intention, a court of equity will, upon appropriate application, reform the writing so that it will truly express the intention of the parties, provided innocent third parties will not be adversely affected thereby." Thorsteinson v. Waters, 65 Wash.2d 739, 399 P.2d 510, at 513 (1965).

Creem v. Northwestern Mut. Fire Ass'n, 56 Idaho 529, 537, 56 P.2d 762 (1936); Exum v. Portneuf-Marsh Valley Irr. Co., 38 Idaho 155, 220 P. 112 (1923).

■ Parol evidence is admissible to prove that by reason of mutual mistake a written instrument does not express the intention or agreement of the parties thereto. Creem v. Northwestern Mut. Fire Ass'n, supra; Gould v. Frazier, 48 Idaho 798, 285 P. 763 (1930); Exum v. Portneuf-Marsh Valley Irr. Co., supra.

■ In support of their contention that a court of equity will not reform a contract because of a mistake of law, defendants rely upon Brinton v. Johnson, 41 Idaho 583, 240 P. 859 (1925). In that case it was determined that the language in the contract was the precise language the parties intended to use. However, one of the parties was mistaken as to its legal effect. The court held that such a mistake was not ground for reformation. Here the court found the written contract did not express the intention of either party. The fact that one or both of the parties may also have mistaken the legal effect of the language used, is not alone sufficient to deny reformation.

"'* * * It is sometimes said that a mistake of law is no ground for equitable relief, but this rule only applies to cases where the contract, as entered into, speaks the true agreement of the parties.*

In such a case, equity will not ordinarily reform the contract merely because one or both of the parties were mistaken as to its legal consequence, *but where, through a mistake of the parties or the draftsman, there is a failure to express the actual contract of the parties as contemplated, owing to the use of inapt words, or where the legal effect of the terms employed by the parties in putting their contract in writing results in an agreement different from the one really entered into, a court of equity will reform the writing so as to effectuate the intention of the parties, even though the mistake was one of law.'"* Weatherford v. Weatherford, 199 Or. 290, 260 P.2d 1097, 1099 (1953).

"The best-considered modern cases recognize that the main object of equitable jurisdiction should be to effectuate the intention of the parties to the instrument, and that any mistake made by them which would defeat such intention should be corrected in equity, irrespective of the question whether the mistake is one of law or of fact." Anno. 135 ALR 1452 at 1453.

"* * * Restatement, Contracts, under Sec. 504, lists this illustration: 'A contracts with B to guarantee certain debts due by C to B. The words of the contract are exactly as intended by both parties, but both understand that the legal effect of the words is to impose only a guarantee of collectibility. The writing will be reformed to express that understanding.'" Essington v. Buchele, 79 S. D. 544, 115 N.W.2d 129, at 131 (1962).

See also: Gould v. Frazier, 48 Idaho 798, 285 P. 673 (1930); Burlington Sav. Bank v. Rafoul, 124 Vt. 427, 209 A.2d 738, 740 (1965); Meyers v. Meyers, 372 S.W.2d 803, 804 (Ky.1963); Pasotex Petroleum Co. v. Cameron, 283 F.2d 63 (10th Cir. 1960); Savings Inv. & Trust Co. v. Connecticut Mut. Life Ins. Co., 17 N.J.Super. 50, 85 A.2d 311, 314 (1951); Gen. Discount Corp. v. Sadowski, 183 F.2d 542 (6th Cir. 1950); Prince v. Friedman, 202 Ga. 136, 42 S.E.2d

434, 436 (1947); 76 C.J.S. Reformation of Instruments § 25, p. 348; 45 Am.Jur., Reformation of Instruments, § 53, p. 615; Corbin on Contracts, § 614; 3 Pomeroy, Eq.Jur. (5th Ed.) § 845.

In *Panhandle Lumber Co. v. Rancour*, 24 Idaho 603, 612, 135 P. 558, 560 (1913), this court said:

"* * * If a mistake has been mutual, the fact that the party who is to be injured thereby, if the mistake be not corrected, was negligent in making the mistake, ought not to prevent a court of equity from correcting it, unless the mistake was willful or fraudulent on his part, and done with a view to injuring or damaging the other party."

■ The trial court's findings of mutual mistake are supported by the evidence. All of the lessees in the chain of leases following the power of attorney given to Ysursa, except defendants and Charlie Sword, testified that when their respective leases were executed the landlord and the attorneys explained to them, and they agreed, that the licenses were to remain with the landlord, for use in connection with the leased premises, upon the termination of their respective leases. Sword was not available and did not testify. Plaintiffs' evidence was to the effect that the same condition was explained to defendants. There was no evidence of any inequitable conduct on the part of plaintiffs, nor that any negligence on their part prejudiced defendants in any legal right, or violated any legal duty owed to them.

■ Defendants also contend that they did not take the state liquor license away form the Owyhee Tavern or the plaintiffs, since the license they have was acquired by them from the state subsequent to the expiration of their lease. State licenses to retail liquor by the drink are renewable annually. I.C. §§ 23–904, 23–908. Under I.C. § 23–903 only two such licenses were available for use in the village of Marsing. Admittedly the license which was obtained from the state by the defendants after the expiration of their lease, was a renewal of the one which had theretofore been exercised by lessees of the Owyhee Tavern, and without which neither the plaintiffs nor a subsequent tenant could obtain a state license for the sale of liquor by the drink on the premises known as the Owyhee Tavern.

Defendants also contend that under an ordinance of the village of Marsing the licenses involved were not transferable and for that reason the court erred in ordering them to transfer the state retail liquor license to plaintiff. The ordinance referred to has reference only to licenses issued by the village, and has no effect upon the transferability of a state license.

Judgment affirmed.

Costs to respondents.

McFADDEN, C. J., and McQUADE, SMITH and SPEAR, JJ., concur.