572 P.2d 865

**CRAZY HORSE, INC., an Idaho Corporation and Steven Giacobbi, Petitioners-Appellants,**

**v.**

**Kelly PEARCE, Commissioner of the Department of Law Enforcement, State of Idaho, and Richard L. Cade, Director of Liquor Law Enforcement in Criminal Investigation, Department of Law Enforcement, State of Idaho, Respondents-Respondents.**

**No. 12527.**

Supreme Court of Idaho.

Dec. 22, 1977.

Lloyd J. Walker of Walker & Kennedy, Twin Falls, for petitioners-appellants.

Wayne L. Kidwell, Atty. Gen., Jay F. Bates, Sp. Asst. Atty. Gen., Boise, for respondents-respondents.

DONALDSON, Justice.

The appellant, Steven Giacobbi, applied to the Department of Law Enforcement, State of Idaho, in January of 1973, for issuance of a retail liquor license. The application was for the Crazy Horse Bar in Ketchum, Idaho. The Department of Law Enforcement declined to issue a license because there were no licenses available for Ketchum.

This denial was appealed to the district court in the form of a petition for a Writ of Mandate to require issuance of a license. A hearing was held on cross motions for summary judgment. The state's motion was granted, the judge refusing to order that a license be issued.

The reason given for denial of the license was that all available licenses for Ketchum allowed under I.C. § 23–903 had been issued. This statute was amended in 1959 to limit the number of licenses available, according to population.

"23–903. License to retail liquor.—* * * No license shall be issued for the sale of liquor on any premises outside the incorporated limits of any city or village, except as provided in this act and the number of licenses so issued for any city shall not exceed one (1) license for each one thousand five hundred (1,500) of population of said city or fraction thereof, as established in the last preceding census, or any subsequent special census conducted by the United States bureau of the census, except that upon proper application thereof not more than two (2) licenses may be issued for each incorporated city with a population of one thousand five hundred (1,500) or less, unless the retail licensing of liquor by the drink has been previously disapproved under the provisions of sections 23–917, 23–918, 23–919, 23–920 and 23–921, Idaho Code; provided, however, that any license heretofore issued may be renewed from year to year without regard to the population of the city for which such license is issued."

By the population criteria set out above, Ketchum is entitled to two liquor licenses. At the time Crazy Horse applied for the license, there existed eleven liquor licenses in the city of Ketchum. All of these licenses had been "grandfathered" in by I.C. § 23–903, where it reads: "* * * provided, however, that any license heretofore issued may be renewed from year to year without regard to the population of the city for which such license is issued."

The eleven licenses existing in Ketchum were issued prior to 1959 when the legislature set up a quota system under I.C. § 23–903. No new licenses have been issued in the city of Ketchum since the quota system originated in 1959. However, all previously existing licenses were allowed to

continue without regard to the limited number allowed by the statute.

Crazy Horse appeals to this Court, contending:

(1) All licenses available for the city of Ketchum had not been issued, and

(2) the limitation of I.C. 23–903 on the number of liquor licenses is unconstitutional under both state and federal constitutions.

■ The first issue to be addressed is whether there was a license available when Crazy Horse applied. Crazy Horse contends that the Department of Law Enforcement incorrectly interpreted I.C. § 23–903 when it found all available licenses for Ketchum had been issued. Crazy Horse argues that the quota system set up by the 1959 amendment to I.C. § 23–903 did not include "grandfathered" licenses in counting the two allowed by statute. Therefore, because two licenses were allowed by the quota system for Ketchum and none have been issued under that system, two remain to be issued and one should be issued to Crazy Horse.

The Twenty-first Amendment to the United States Constitution confers upon the states broad powers over the sale of liquor. Article 3 of the Idaho Constitution charges the state legislature to direct "efforts for the promotion of temperance and morality." Idaho Const. art. 3, § 24. Further, art. 3, § 26 specifically reads:

"From and after the 31st day of December in the year 1934, the legislature of the state of Idaho shall have full power and authority to permit, control and regulate or prohibit the manufacture, sale, keeping for sale, and transportation for sale, of intoxicating liquors for beverage purposes."

In the cases of *Bilbao v. Krettinger,* 91 Idaho 69, 415 P.2d 712 (1966) and *Pern v. Stocks,* 93 Idaho 866, 477 P.2d 108 (1970), the quota system was discussed. In *Bilbao,* this Court said, "Under I.C. § 23–903 only two such licenses [state liquor licenses] were available for use in the village of Marsing." *Id.,* 91 Idaho at 74, 415 P.2d at 717. This was despite the fact that the license in question had been "grandfathered."

In *Pern* this Court said, "Under I.C. § 23–903, only two licenses may be issued for towns under 1,500 population, with the exception that licenses issued previously may be renewed." *Id.* 93 Idaho at 870, 477 P.2d at 112.

Crazy Horse argues that the above language is mere dicta and that the number of licenses available was not an issue in either case. While this language may be dicta, it correctly states the law. Idaho Code § 23–903 is the only statute that sets the number of liquor licenses allowed. That quota system is not bifurcated into new licenses allowed according to population and any other previously existing "grandfathered" licenses.

The legislature did not take away any of the licenses that existed previous to the 1959 amendment. That is why the "grandfather" provision was included in I.C. § 23–903. However, the statute does not separate the number of licenses allowed under the quota system from those already existing. The Department of Law Enforcement properly denied the application of Crazy Horse.

■ Crazy Horse asserts that the statute limiting the number of liquor licenses by the quota system is unconstitutional. Basically, their argument is that the quota system is an arbitrary denial of due process because it "bears no rational relationship to the preservation and promotion of the public welfare." This is because the licensing system favors those few who have liquor licenses without controlling the amount of liquor sold.

Idaho case law defines the status of a liquor license.

"A liquor license is simply the grant or permission under governmental authority to the licensee to engage in the business of selling liquor. Such a license is a temporary permit to do that which would otherwise be unlawful; it is a privilege rather than a natural right and is personal to the licensee; it is neither a right of

property nor a contract, or a contract right. [citations omitted]." *Nampa Lodge No. 1389 v. Smylie,* 71 Idaho 212, 229 P.2d 991 (1951).

Although a liquor license is a privilege and not a property right; *State v. Myers,* 85 Idaho 129, 376 P.2d 710 (1962); the licensing procedure can not be administered arbitrarily. *Weller v. Hopper,* 85 Idaho 386, 379 P.2d 792 (1963).

Crazy Horse's proposition comes down to the idea that it is constitutionally guaranteed the right to compete in the retail liquor market. Such is not the case.

"We need cite no authority for the proposition that the selling of intoxicating liquor is a proper subject for control and regulation under the police power. It is likewise universally accepted that no one has an inherent or constitutional right to engage in a business of selling or dealing in intoxicating liquors. [citations omitted]." *Gartland v. Talbott,* 72 Idaho 125, 131, 237 P.2d 1067 (1951).

A similar argument was made in *State v. Cantrell,* 94 Idaho 653, 496 P.2d 276 (1972). There it was contended that to limit liquor licenses to establishments within incorporated cities was a denial of equal protection. The opinion laid out the test to be applied in ruling on such statutes.

"Some discrimination is inherent in any legislative attempt to limit the number of retail outlets for liquor by the drink, and because any legislation is presumed to be constitutional, a mere showing of discrimination has been held insufficient to defeat the regulatory scheme. Nevertheless, to comply with the equal protection requirements of the federal and state constitutions, the discriminatory classification must reflect a reasonably conceivable, legitimate public purpose, and it must relate reasonably to that ascribed purpose. [citations omitted]." *Id.* at 655–56, 496 P.2d at 278–79.

A concurring and dissenting opinion explained the reasonableness of the statute in question:

"I agree that the limitation of liquor licenses to incorporated cities and to municipal or county airports—in order to insure adequate police supervision and protection and also to provide a closer review of prospective new licenses—is reasonably related to the purpose of promoting public health, safety, and welfare, and, therefore, complies with the equal protection requirements of the federal and state constitutions." *Id.* at 657, 496 P.2d at 280.

Other courts have upheld a quota system similar to ours. *State v. City of Jacksonville,* 25 So.2d 569 (Fla.1946); *Zodrow v. State,* 154 Wis. 551, 143 N.W. 693 (1913), err. dismissed, 239 U.S. 629, 36 S.Ct. 165, 60 L.Ed. 475 (1915); *Sawyer v. Gallagher,* 151 Iowa 64, 130 N.W. 173 (1911).

"* * * and these statutes [ratio laws], apparently without exception, have received the sanction of the courts." Annot., 124 A.L.R. 827 (1940).

We cannot say that the refusal to issue a license was in any way arbitrary or a denial of due process, simply because in the eyes of the legislature there already existed enough licenses to serve the city of Ketchum. This is especially true given the nature of legislative control over the retail sale of liquor by the Idaho Constitution.

"A limitation of the number of licenses which will be issued for the sale of intoxicants within a municipality or within a given area is not of itself prohibitory, and is recognized as a legitimate regulation tending to promote public health, safety and welfare within the police power. [citations omitted]." *Gartland v. Talbott, supra,* 72 Idaho at 130, 237 P.2d at 1070.

The statutory scheme for issuing liquor licenses is constitutional.

The order of the district court granting summary judgment for the state is affirmed. Costs to respondents.

McFADDEN, C. J., and SHEPARD and BAKES, JJ., concur.

BISTLINE, Justice, dissenting.

The Act authorizing the retail sale of liquor by the drink became the law of Idaho

in 1947. What is now I.C. § 23–903 then provided that the Commissioner of Law Enforcement was empowered, authorized, and directed to issue licenses to qualified applicants. In 1959, I.C. § 23–903 was amended to make it thereafter the law that "no license *shall be* issued" except as provided in the Act. The provision applicable to the present case states that "not more than two licenses may be *issued* for each incorporated city or village with a population of 1,500 or less." (Emphasis added.) The legislature, having expressed its will as to licenses thereafter to be *issued,* properly dealt with the well-known fact that there were already many such licenses outstanding in all of the various municipalities. It gave such licenses recognition and created the distinct concept of *renewals,* speaking thusly,

".  .  .  provided, however, that any license heretofore issued may be *renewed* from year to year *without regard* to the population of the city or village for which such license is issued." (Emphasis added.) I.C. § 23–903.

The renewal concept of licenses was undoubtedly welcome, both to the many by-the-drink retailers in Idaho and to the Department. Prior thereto, it is remembered that every year, year after year, the game was played of filling out applications for licenses and outlining all of the requisite information which the Department had been given in previous years. The renewal concept was carried over into an amendment to I.C. § 23–904:

"In the event a licensee who was previously issued a license on a prorated basis under the provisions hereof desires to have such license renewed for the same period for the next succeeding year, he shall file his intention to so apply for such license with the commissioner of law enforcement of the State of Idaho, accompanied by the fee required for the issuance of such license on or before December 31st of the year preceding." Ch. 118, § 2, 1959 Idaho Sess.Laws 256.

In 1967, the legislature amended I.C. § 23–908 by adding to the sentence "All licenses shall expire at 1:00 o'clock A.M. on January 1st of the following year," "*subject to the renewal provisions of section 23–904.*"

It is altogether clear what the legislature did in 1959. It respected existing licenses, declaring that such could be renewed from year to year regardless of population. Additionally, it provided for the issuance of two licenses for each incorporated city or village with a population of 1,500 or less. It would have been a simple matter indeed for the legislature to have used this type of language:

"Licenses heretofore issued may be renewed from year to year without regard to population. Where the number of licenses heretofore issued equals or exceeds the number which would otherwise be issuable, the Commission shall not issue any new licenses."

Appellant has correctly read the statute, which, in the language of Senator Sam Ervin, is in "the Queen's English." An unambiguous statute requires no construction, nor should the courts of this State sit to declare statutory law to be that which they think the legislature may have intended. *Ware v. Idaho State Tax Commission,* 98 Idaho 477, 567 P.2d 423 (1977).

The Director should be directed to issue the license applied for.