684 P.2d 996

**Howard M. HENSON,
Plaintiff-Appellant,**

v.

**DEPARTMENT OF LAW ENFORCE-
MENT, State of Idaho, Defendant-
Respondent.**

No. 14739.

Supreme Court of Idaho.

July 18, 1984.

Reginald R. Reeves, Idaho Falls, for plaintiff-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen. and Brian N. Donesley, argued, Boise, for defendant-respondent.

BISTLINE, Justice.

This appeal is from an order of the district court which affirmed the hearing examiner's decision sustaining defendant Department of Law Enforcement's revocation of the plaintiff's retail alcoholic beverage license. We affirm.

The stipulated facts are as follows: On November 2, 1978, plaintiff, doing business as Snake River Convention Center, was issued an Idaho retail liquor license. The license in question was issued by the defendant Department of Law Enforcement under the special provisions for issuance of liquor licenses to convention facilities pursuant to I.C. § 23–903. On January 12, 1979, plaintiff successfully renewed his liquor license.

During the entire time period in question, there was in existence a facility, the West Bank Motel, which had the required number of rooms and space to meet the statutory definition of a "convention center." The West Bank Motel, held a regular Idaho retail liquor license pursuant to I.C. § 23–903, and not the special license issued to plaintiff under the same statutory provision.

On November 26, 1979, the defendant gave notice to plaintiff of its intention to revoke plaintiff's Idaho retail liquor license, alleging that such license was issued in error. Pursuant to plaintiff's request, the defendant held an administrative hearing on the proposed suspension on February 5, 1980.

On March 20, 1980, the hearing officer for the defendant ordered the suspension

of plaintiff's liquor license. By order dated May 17, 1980, the license was officially revoked. After plaintiff's petition for rehearing was denied, plaintiff exercised his right of appeal to the district court, seeking an order vacating the defendant's order of revocation and reinstating plaintiff's liquor license.

The plaintiff requested that the matter before the district court be heard as a trial *de novo.* The trial court decided that the appeal should be determined by judicial review based solely on the record before it. After reviewing the record and hearing the arguments submitted by both parties, the trial court determined, in a memorandum opinion dated July 26, 1983, that the findings of fact and the conclusions of law entered by the hearing examiner were appropriate, and that the order revoking the license should be affirmed. Plaintiff accordingly filed the present appeal.

The principal contention raised by plaintiff on appeal is that I.C. § 23–903, while contemplating the limitation of but one *special* convention center retail alcoholic beverage license per city, does not bar the issuance of such a special license if there exists within the city a facility meeting the statutory criteria but holding only a *regular* license.[1]

In considering appellant's argument that I.C. § 23–903 restricts only liquor licenses issued specifically pursuant to the convention center exception, *supra,* and not the total number of liquor licenses issued to convention centers, i.e., "special" liquor licenses, not "regular" liquor licenses, we note that an analogous situation was dealt with in the relatively recent case of *Crazy Horse, Inc. v. Pearce,* 98 Idaho 762, 572 P.2d 865 (1977). In that case, appellant Crazy Horse Bar applied for a liquor li-

cense. However, it was denied such a license, under I.C. § 23–903, for the reason that all available liquor licenses had been previously exhausted. At the time, there existed eleven liquor licenses in the City of Ketchum, where Crazy Horse sought to be licensed. All of these licenses had been "grandfathered" in by I.C. § 23–903, the applicable provision of which reads as follows: "[P]rovided, however, that any license heretofore issued may be renewed from year to year without regard to the population of the city for which such license is issued." Without the grandfather clause, Ketchum would have had only two such liquor licenses available for the entire city. It was the contention of the appellant bar on appeal that the Department of Law Enforcement incorrectly interpreted I.C. § 23–903 when it found all available licenses for Ketchum to have been already issued. Crazy Horse argued that the quota system set up by the 1959 amendment to I.C. § 23–903 did not include "grandfathered" licenses in counting the two allowed by statute. Therefore, reasoned appellant, because two licenses were allowed by the quota system for Ketchum and none had been issued under that system, there still remained two to be issued.

However, the Court, in holding against appellant, stated the following:

"Idaho Code § 23–903 is the only statute that sets the number of liquor licenses allowed. That quota system is not bifurcated into new licenses allowed according to population and any other previously existing 'grandfathered' licenses.

"The legislature did not take away any of the licenses that existed previous to the 1959 amendment. That is why the 'grandfather' provision was included in

---

1. I.C. § 23–903 was amended in 1978 to read, in pertinent part, as follows:

"Nothing in this chapter to the contrary shall prohibit the issuance of a license to the owner, operator, or lessee of an actual, bona fide convention center which is within the incorporated limits of a city having a population of three thousand (3,000) or greater, and which city does not have located therein a convention center with a valid license to sell liquor

by the drink. For the purpose of this section, a convention center means a facility having at least one hundred twenty (120) sleeping rooms and an adjoining meeting room which will accommodate not less than three hundred fifty (350) persons, whether or not such room may be partitioned into smaller rooms, and provide that such meeting room shall contain at least three thousand (3,000) square feet of floor space."

I.C. § 23–903. *However, the statute does not separate the number of licenses allowed under the quota system from those already existing. The Department of Law Enforcement properly denied the application of Crazy Horse."* 98 Idaho at 764, 572 P.2d at 865.

■ In the present case, appellant's argument essentially mirrors that made in *Crazy Horse, supra.* Appellant appears to argue that, because I.C. § 23–903 provides for the issuance of a special convention center license to a qualifying convention center within the incorporated limits of a city having a population of 3,000 or greater, such license exists regardless of the prior regular licensing of other qualifying convention centers in the same city. However, such is clearly not the case. As in *Crazy Horse, supra,* the "quota system is not bifurcated" into regular convention center licenses allowed according to population and other newly issued "special" convention center licenses. I.C. § 23–903 simply provides for the issuance of a license to a qualifying convention center in a city of 3,000 or more people. In the present case, it was stipulated by the parties that, at the time appellant applied for his convention center liquor license, Idaho Falls already had in existence a licensed facility having the required number of rooms and space to meet the statutory definition of a "convention center." Therefore, it is clear that Idaho Falls had already exhausted its quota of convention center liquor licenses, and that the appellant should properly have been denied his license at the time of his initial application.

In addition, the statute by its own terms, regardless of any analogous reasoning to *Crazy Horse, supra,* clearly precludes the issuance of a license to appellant in this case. As noted above, I.C. § 23–903 states the following with regard to the issuance of a license to a qualifying convention center:

"Nothing in this chapter to the contrary shall prohibit the issuance of a license to the owner, operator, or lessee of an actual, bona fide convention center which is within the incorporated limits of a city having a population of three thousand (3,000) or greater, *and which city does not have located therein a convention center with a valid license to sell liquor by the drink."* (Emphasis added.)

It is clear from the quoted language that the convention center exception to the restrictions to liquor licenses mandated by I.C. § 23–903 makes the absence of another qualifying convention center within the same city a condition precedent to its operation and effect. In the present case that condition was not met; hence, it is clear that the convention center exception was of no effect and could in no way benefit appellant herein. Therefore, from the foregoing we conclude that appellant was not eligible for a liquor license under the convention center exception contained in I.C. § 23–903.

■ Appellant next contends that the Department of Law Enforcement violated the equal protection clause of the fourteenth amendment to the United States Constitution and of article 1, section 2 of the Idaho Constitution by its selective enforcement of I.C. § 23–903.[2] Appellant apparently bases its selective enforcement claim on its assertion that the Department

---

**2.** Appellant apparently also argues the facial invalidity of the statute on equal protection grounds. However, I.C. § 23–903 has been repeatedly upheld against similar charges in the past. *See, e.g., State v. Cantrell,* 94 Idaho 653, 496 P.2d 276 (1972); *Adams v. Department of Law Enforcement,* 99 Idaho 255, 580 P.2d 858 (1978). The legislature specifically created the convention center exclusion "to encourage the economic development of the state of Idaho and its tourist and tourist-related industry" and "to encourage the construction and operation of convention centers." 1978 Idaho Sess.Laws, ch.

126, p. 285. This is indisputably a legitimate state purpose, and it is our view that the exclusion presently under consideration clearly bears a rational relationship to that purpose by encouraging the development of convention centers in areas which are not already served thereby, while nonetheless maintaining its control over the number of such licensed facilities, thereby contributing to the "promotion of temperance and morality." *See* Idaho Constitution, art. 3, § 24. Therefore, our inquiry in this regard is at an end.

of Law Enforcement had issued a special [convention center] liquor license to the Hilton Inn, located in Pocatello, Idaho, when there was already in existence and operation in Pocatello a facility having the required number of rooms and space to meet the statutory definition of a "convention center." Therefore, appellant argues, because such a license was issued in the Pocatello situation, while appellant was himself denied a license under essentially the same circumstances in Idaho Falls, appellant was deprived of equal protection of the laws through their uneven and selective enforcement.

■■■ In its allegation of selective enforcement, we assume the gravamen of appellant's objection to be that the subject statute has been applied in a discriminatory manner, therefore denying appellant equal protection of the law. Selective enforcement, without more, does not comprise a constitutional violation under either the Idaho or United States Constitutions. *See State v. Bowman*, 104 Idaho 39, 42, 655 P.2d 933, 936 (1982); *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962).[3] The United States Supreme Court and Idaho Supreme Court are in perfect accord in their requirement that, in order to establish an instance of discriminatory application of the laws such that equal protection standards have been violated, there must first be shown a deliberate plan of discrimination based on some unjustifiable classification such as race, sex, religion, etc. As this Court stated in *State v. Bowman, supra:*

> "*Bowman next contends that the subject ordinance has been applied in a discriminatory manner, denying him equal protection of the law. For this contention to be successful, Bowman must show a deliberate and intentional plan of discrimination against him, based upon some unjustifiable or arbitrary classification.* [Citations omitted.]

"Here, Bowman has shown, at best, selective enforcement. The fact that law enforcement officials may have checked Bowman for compliance with the ordinance more frequently than owners or operators of other establishments, does not constitute unlawful discriminatory application of the ordinance. [Citations omitted.] Nor does the exercise of a prosecutor's discretion as to whom and when to prosecute constitute unlawful discrimination. [Citations omitted.] We hold that Bowman failed to show a discriminatory application of the ordinance." (Emphasis added.)

And, the Supreme Court in *Oyler v. Boles, supra,* stated the following:

> "Thus petitioners' contention is that the habitual criminal statute imposes a mandatory duty on the prosecuting authorities to seek the severe penalty against all persons coming within the statutory standards but that it is done only in a minority of cases. This, petitioners argue, denies equal protection to those persons against whom the heavier penalty is enforced. We note that it is not stated whether the failure to proceed against other three-time offenders was due to lack of knowledge of the prior offenses on the part of the prosecutors or was the result of a deliberate policy of proceeding only in a certain class of cases or against specific persons. The statistics merely show that according to penitentiary records a high percentage of those subject to the law have not been proceeded against. There is no indication that these records of previous convictions, which may not have been compiled until after the three-time offenders had reached the penitentiary, were available to the prosecutors. Hence, the allegations set out no more than a failure to prosecute others because of a lack of knowledge of their prior offenses. This does not deny equal protection due petitioners under the Fourteenth Amendment. [Citations omitted.]

---

3. Although the case at bar does not involve a criminal prosecution, but rather the revocation of a license pursuant to state statute, we nevertheless view the case law concerning allegations of discriminatory prosecution as being instructive and indeed controlling on this point.

"*Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged.* [Citations omitted.]" (Emphasis added.)

*See also Harrington v. United States*, 673 F.2d 7 (1st Cir.1982) ("Absent any allegation of a discriminatory purpose, a mere failure of those who administer the law to treat equally all persons who violate the law does not constitute a denial of the constitutional right to equal protection."); *Kuzinich v. County of Santa Clara*, 689 F.2d 1345 (9th Cir.1982) ("In order to prevail in this allegation [of selective prosecution] appellant must bear the burden of proving at least a prima facie case. This requires that appellant first demonstrate that others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted. Secondly, appellant must show that his selection was based on an impermissible ground such as race, religion or his exercise of his first amendment right to free speech."). *But see, Zeigler v. Jackson*, 638 F.2d 776 (5th Cir.1981).

■ In the present case, respondent contends that we should not consider on appeal factual allegations raised by appellant for the first time concerning selective or discriminatory enforcement by the Department of Law Enforcement with regard to I.C. § 23–903. However, we need not consider the merit of respondent's argument in this regard, as, even if appellant is correct in his allegations, we hold that he has not made the necessary showing to prevail on this point. The foregoing cases clearly establish that, while selective enforcement is a necessary prerequisite to a prima facie case of discriminatory enforcement, it is in and of itself insufficient. To prevail on such a claim, it is clear that

appellant also "must show a deliberate and intentional plan of discrimination ... based upon some unjustifiable or arbitrary classification." *Bowman, supra.* In the present case there has been neither a showing nor allegation of discriminatory intent by the Department of Law Enforcement. Therefore, we hold that the appellant's claim of discriminatory enforcement must of necessity fail.

■ Finally, appellant alleges that the Department of Law Enforcement acted beyond its jurisdiction in revoking a retail alcoholic beverage license for reasons other than those set forth in I.C. § 23–933. I.C. § 23–933 states the following:

"**23–933. Suspension, revocation, and refusal to renew licenses.**—(1) The director may suspend, revoke or refuse to renew a license issued pursuant to the terms of this act for any violation of *or failure to comply with the provisions of this act* or rules and regulations promulgated by the director or the state tax commission pursuant to the terms and conditions of this act." (Emphasis added.)

In the present case, appellant, though guilty of no misfeasance, nonetheless was not in compliance with the provisions set forth in I.C. § 23–903. Because I.C. § 23–903 provided that a liquor license was to be granted to the owner of a convention center only if the city in which that convention center was located did not already have a convention center with a valid liquor license, appellant clearly was not qualified for such license. Therefore, appellant's arguments to the contrary notwithstanding, the fact that appellant committed no unlawful acts or omissions such as to mandate revocation of his liquor license is irrelevant in the present instance. Appellant was never in compliance with the requirements of I.C. § 23–903, and therefore the license was subject to revocation.

The decision of the district court is affirmed. Costs to respondents. No attorney's fees on appeal.

DONALDSON, C.J., and BAKES and HUNTLEY, JJ., concur.

SHEPARD, J., concurs in the result.