784 P.2d 331

The STATE of Idaho, ex. rel., Mack W. RICHARDSON, Jr., Director, Department of Law Enforcement of the State of Idaho, Plaintiff–Respondent,

v.

Dante & Janet PIERANDOZZI, d/b/a, D & J Lounge, City of Montpelier, County of Bear Lake, State of Idaho, Defendants–Appellants.

No. 17863.

Supreme Court of Idaho.

Dec. 19, 1989.

**2**

Ardee Helm, Jr., Montpelier, for defendants-appellants.

Jim Jones, Atty. Gen., Robert M. MacConnell, Chief Counsel, Dept. of Law Enforcement, Boise, argued, for plaintiff-respondent.

McDEVITT, Justice.

Appellants Dante and Janet Pierandozzi are the holders of an alcoholic beverage license for their business, the D & J Lounge in Montpelier, Idaho. On November 6, 1986, appellants employed the Westworld Playmates Male Dance Review to perform on the licensed premises. Undercover Department of Law Enforcement agents attended the show. The agents later testified that during the course of the performance the dancers exposed to view clefts of buttocks, pubic hair, and the anus of one of the dancers.

As a result of this performance, the department of law enforcement initiated administrative proceedings to revoke the liquor license of appellants for violations of I.C. § 23–1010A, which prohibits licensees from allowing nudity on the licensed premises.

Appellants were notified of the revocation proceeding by personal service of the Petition to Revoke and Notice of Revocation on December 30, 1986, and a Notice of Hearing mailed to appellants on April 20, 1987.

On May 12, 1987, an administrative hearing was held where each of the parties presented witnesses. The Hearing Examiner concluded that I.C. § 23–1010A had been violated, and revoked appellants' liquor license. The District Court upheld that determination, and appellants now challenge that holding before this Court.

Appellants argue that 1) the notice of the hearing was inadequate, 2) the hearing Examiner's findings were clearly erroneous, 3) revocation of their liquor license is in excess of statutory authority, 4) the Department of Law Enforcement is enforcing the statute in an arbitrary manner, and 5) enforcement of the statute is unconstitutional.

## I. Adequacy of Notice

▮ Appellants assert that the notice they received was inadequate under I.C. § 67–5209. We find that the notice did fulfill the statutory requirements of that section.

Section 67–5209 provides that in a contested case, the parties shall have an opportunity for a hearing after reasonable notice. The statute lists the specific information to be included in that notice.[1] In this case, the record reflects that a Petition to Revoke and a Notice of Revocation were personally served upon appellants more than four months before the hearing. Three weeks before the hearing, a Notice of Hearing was mailed to appellants. Taken together, the information contained in the three documents satisfy the notice requirement of § 67–5209.

The purpose of the notice requirement is to inform parties of the particular facts and issues to be addressed in the hearing, allowing an opportunity to prepare a defense. *Department of Law Enforcement v. Engberg*, 109 Idaho 530, 708 P.2d 935 (Ct.App. 1985). In this case appellants have only challenged the statutory sufficiency of the Notice of Hearing, and do not allege that they were unable to prepare an adequate defense. We find that both the letter and the spirit of the notice requirement were satisfied by the notice to appellants.

## II. Standard of Review of the Agency Findings

▮ Appellants also urge this Court to reverse the findings reached by the Hearing Examiner. The standard of judicial review of agency actions is supplied by I.C. § 67–5215(g). That section allows a court to reverse or modify an agency decision only under limited circumstances, including, *inter alia*, a constitutional violation, action in excess of statutory authority, clearly erroneous findings of fact, an arbitrary and capricious decision or one characterized by an abuse of discretion.

### A. Constitutional Violation

▮ Appellants challenge the constitutionality of the procedure whereby the Hearing Examiners are chosen from a list maintained by the Department of Law Enforcement and are compensated by the Department on a case by case basis. In support of this challenge appellants draw an analogy between this current system at the Department of Law Enforcement and the former Justice of the Peace system which was condemned by the U.S. Supreme Court in *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), where the Court held that due process of law was denied to one tried before a judicial officer whose sole source of income was the fines collected from the accused.

We find this rule to be inapplicable in this case for several reasons. First, the only authority which appellants cite to support this challenge unequivocally states that *Tumey* only relates to judicial officers, and has never been applied to disqualify quasi-judicial or administrative officers. 72 A.L.R. 375 § 1. In addition, assuming *arguendo* that the rule does apply to administrative officers, it is limited to disqualification of officers who are paid only if they convict the accused, and does not apply where the officer is merely compensated according to the number of cases heard. 72 A.L.R. 397, et seq., § 10. Finally, appellants claim that the Hearing Examiner is

---

1. "Notice shall include: (1) a statement of the time, place and nature of the hearing; (2) a statement of the legal authority and jurisdiction under which the hearing is to be held; (3) a reference to the particular sections of the statutes and rules involved; (4) a short and plain statement of the matters asserted." I.C. § 67–5209. Notice in contested cases must comply with the provisions of this statute to be valid. *Nelson v. Hopper*, 86 Idaho 115, 383 P.2d 588 (1963).

inclined to find in favor of the Department of Law Enforcement in order to attract future cases and compensation from the Department. This potential for bias is cured by the fact that the parties have the right to judicial appeal of any administrative decision manifesting an abuse of discretion, arbitrary and capricious disposition, or findings which are clearly erroneous in light of the evidence presented at the hearing. I.C. § 67–5215(g). Appellants have failed to demonstrate any such bias on the part of the Hearing Examiner on the record of this case. Consequently, this Court has no basis on which to find a denial of due process resulting from the procedures of the hearing.

### B. Excess of Statutory Authority

■ Appellants assert that the conduct at issue is not within the scope of the statute which they are accused of violating. I.C. § 23–1010A prohibits in a licensed premises the "[e]mployment or use of any person while such person is unclothed or in such attire ... as to expose to view any portion of the female breast below the top of the areola or of any portion of the pubic hair, anus, cleft of buttocks, vulva, or genitals." Appellants suggest that the word "female" modifies the entire list of nouns, thus excluding male nudity as a grounds for license revocation. This argument is not persuasive.

The word "person" indicates that the legislature intended the statute to apply to nudity of either sex. Further, the word "or" following the "female breast" clause is a disjunctive term, separating the "female" adjective from the remainder of the list. Thus, the conduct of the male dancers employed by appellants is clearly within the plain meaning of the statute.

■ Another issue concerning the scope of the statute is whether under the terms of the statute appellants can be held liable for the illegal conduct of the dancers in their employ. In order to have their liquor license subject to revocation, the licensees must be found guilty of "conducting, permitting, or encouraging" the illegal activity on the licensed premises. I.C. § 23–1010A.

The record reflects that appellants were aware of the conditions attached to their liquor license and gave detailed instructions to the dancers before the performance as to what was not permitted under the law. Thus, they argue that they did not sanction or encourage the illegal activity, and did not have the requisite intent to violate the statute.

Although the statute does provide for misdemeanor penalties where its nudity provisions are violated, appellants in this case are not charged with a criminal offense. The sanctions provided for in the context of liquor licensing are not intended to punish the individual proprietors. *State v. Meyers*, 85 Idaho 129, 132–33, 376 P.2d 710, 711 (1962). They are part of an administrative system within the legitimate scope of the State's police power to protect the public health, safety and morals. The terms and conditions under which a liquor license is granted are subject to the pleasure of the legislature under the "broad sweep" of authority granted to the states under the Twenty–First Amendment of the U.S. Constitution. *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *Crazy Horse, Inc. v. Pearce*, 98 Idaho 762, 765, 572 P.2d 865, 868 (1977), *citing Gartland v. Talbott*, 72 Idaho 125, 131, 237 P.2d 1067 (1951).

Another of the terms and conditions imposed upon holders of Idaho liquor licenses by the legislature is contained in § 23–935, which provides in part: "A violation of any of the provisions of [Title 23] by any agent, employee, servant, or other person in any way acting on behalf of the licensee shall be presumed to be a violation by the licensee." In addition to this statutory authority, this rule is supported by the case law of Idaho. In *State v. Meyers*, 85 Idaho 129, 376 P.2d 710 (1962), this Court held that licensees must be responsible to the licensing authority for the conduct of their employees. Similarly, in *Palm Gardens v. Oregon Liquor Control Commission*, 15 Or.App. 20, 514 P.2d 888 (1973) the Oregon court held that a bar owner could be held responsible for lewd conduct of dancers which violated liquor licensing statutes,

based on the fact that the bar owner was present and at all times had a right to control the conduct of the dancers.

Even without the benefit of the foregoing statutory presumption, the appellants would be personally liable for violating the provisions of § 23–1010A if they conducted, permitted, or encouraged the violation. Although it is uncontested that Dante Pierandozzi explained to the dancers the type of performance which would not be permitted under the terms of the liquor license, this fact alone does not absolve appellants of responsibility for the dancers' conduct. The licensees were present at the performance and did not attempt to stop or control the performance when the dancers began to expose portions of their anatomies in violation of the requirements of the statute, of which the licensees were admittedly aware. Appellants' failure to act amounted to "permitting" the conduct at issue.

In sum, appellants' conduct was within the scope of § 23–1010A. Therefore, we hold that the Hearing Examiner's finding that appellants were in violation of that section was not in excess of his statutory authority.

C. Clearly Erroneous Findings

■ This Court is requested to overturn the findings of the Hearing Examiner as clearly erroneous in light of the evidence presented at the hearing.

Appellants suggest that the Hearing Examiner should have stated in his findings his reasons for discounting the testimony of witnesses for appellants, who testified that they were present and did not see the dancers exposing body parts in contravention to the statute. However, the Hearing Examiner, as the trier of fact, was entitled to place greater or lesser weight on any particular piece of evidence according to its relative credibility. *Thomson v. Marks,* 86 Idaho 166, 384 P.2d 69 (1963).

Appellants also contend that the factual conclusion that cleft of buttock and pubic hair were exposed by the dancers was unsupported by the evidence. We find that this conclusion was supported by sufficient evidence, as embodied in the testimony of Tammy Leshikar, Cynthia Maum and Deputy Sheriff Athay. Although these witnesses were not able to provide the medical definition of pubic hair or cleft of buttock, there is sufficient evidence that at least part of what they saw comes within the scope of the statute.

III. Arbitrary Enforcement

■ It is argued that the Department of Law Enforcement acted arbitrarily and capriciously, abusing its prosecutorial discretion in enforcing I.C. § 23–1010A against appellants. There is nothing specific in the record to support this contention. The fact that this particular group of dancers has performed in almost every state of the United States and Canada without similar enforcement actions ensuing is not relevant to the enforcement of the liquor laws of Idaho. We find there was no abuse of discretion by enforcement authorities in this case.

IV. First Amendment and Free Speech

■ In countering appellant's argument that nude dancing enjoys the protection of the First Amendment, respondent argues that the State's power to regulate conduct in licensed liquor establishments under the Twenty–First Amendment is entirely independent of the other individual guarantees of the U.S. Constitution. This argument is based on the holding by the United States Supreme Court in *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). The Supreme Court in *LaRue* upheld a California regulation governing sexual conduct and nudity in licensed liquor establishments. However, far from declaring the Twenty–First Amendment alone to be the supreme law of the land, the Court recognized that each of the provisions in the Constitution "must be considered in the light of the other, and in the context of the issues and interests at stake in any concrete case." *Hostetter v. Idlewild Bon Voyage Liquor Corp.,* 377 U.S. [324] at 332, 84 S.Ct. [1293] at 1298 [12 L.Ed.2d 350 (1964)]." *See also, Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27

L.Ed.2d 515 (1971) (Twenty–First Amendment does not supercede notice and hearing requirement of the Due Process Clause); *Liquor Corp. v. Duffy*, 479 U.S. 335, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987) (Twenty–First Amendment does not provide an exception to anti-trust laws); *Craig v. Boren*, ʻ29 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 39ʻ (1976) (Twenty–First Amendment does not override the Equal Protection Clause); *Larkin v. Grendel's Den, Inc.*, 459 U.S. 116, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982) (Twenty–First Amendment does not pre-empt the Establishment Clause.)

*LaRue* should not be understood to stand for the proposition that the Twenty–First Amendment overrides the First Amendment, but rather for the notion that "the Twenty–First Amendment power over alcohol consumption is broad enough to embrace state power to zone strong sexual stimuli away from places where liquor is served." Tribe, *American Constitutional Law* (1988) at 478 n. 15. Thus, although nude dancing does involve First Amendment considerations, *LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), in the narrow context of liquor licensing the state has the power to regulate nude and sexually explicit conduct in licensed establishments without offending the Constitution.

■ Appellants also challenge I.C. § 23–1010A on the grounds that the statute's anatomical references are not sufficiently concise. It is argued that the words "pubic hair" and "cleft of buttock" are vague, such that a tavern owner could lose a liquor license if an employee exposes genitals or pubic hair in the rest room, some portion of the hindquarters while leaning over to retrieve a bottle from the bar in loose fitting clothing, or bodily hair between the belt and shirt.

Apparently, appellants are arguing that the statute suffers from impermissible vagueness, making the reach of the statute over-broad. We find that to the contrary, the provisions of § 23–1010A are susceptible of definitions according to common sense and commonly available sources of reference.

Idaho Code § 23–1010A was intended to prevent sexual stimuli in places where liquor is sold. It was not intended to apply to natural and customary conduct in the rest rooms of licensed premises. "Cleft of buttock" refers to the cleft ("a hollow between ridges or protuberances," *Webster's Third New International Dictionary* (1966) at 421) between the buttocks, "two rounded prominences ... that form the lower part of the back ... and consist largely of the gluteus muscles." *Id.* at 305. For the purpose of determining grounds for liquor license revocation "cleft of buttock" is limited to the exposition of a substantial portion of the entire cleft. The term "pubic hair" is defined as that hair which is found on the lower hypogastric region of the abdomen, below the umbilical region. *See, id.* ("abdominal regions," at 3; "pubes" at 1836.)

In the case at hand there is sufficient evidence to support the Hearing Examiner's conclusion that there were grounds to revoke appellants' liquor license under the definitions set out above. Tammy Leshikar testified that she saw pubic hair on a dancer which was two to three inches above the genitals, and both she and Cynthia Maum testified that they saw the anus of one of the dancers. Further, Deputy Sheriff Greg Athay and Keith Matthews testified that the costumes of the dancers were not wide enough to span the divide comprising the cleft of the buttocks. This testimony is sufficient to uphold the revocation of the liquor license under the interpretation of I.C. § 23–1010A.

The Hearing Examiner concluded in Conclusion of Law II that the acts of the dancers in attire which permitted the view of pubic hair, anus and cleft of buttock, was prohibited activity under I.C. § 23–1010A. This conclusion was supported by Findings of Fact IV and V. In Finding of Fact IV the Hearing Examiner noted the conflicting testimony of the witnesses for appellants and respondent. In Finding of Fact V, the Examiner stated that he was persuaded by the detailed observations of the law enforcement officers. These factual findings in the record are

sufficient to support the conclusion of law reached by the Hearing Examiner.

Accordingly, the revocation of appellants' liquor license is upheld for violations of the provisions of I.C. § 23–1010A.

BAKES, C.J., and JOHNSON and BOYLE, JJ. concur.

BISTLINE, Justice, specially concurring.

My purpose in writing separately is two-fold: First, it is to commend Judge Transtrum for making the extra effort and taking the extra time necessary to discuss the drastic change in statutory alcoholic beverages law created by the legislature's 1983 amendment thereof adding **I.C. § 23–1010A—Prohibited Acts—Misdemeanors—Revocations,** which emasculated the right of a license holder to have the Department of Law Enforcement's order made subject to judicial review—*review which is meaningful.* [2]

Second, my purpose is to give fair fore-warning that, because of the well-reasoned views of Judge Transtrum, should the situation which he finds unsavory not be corrected, it may very well be that in the next case which comes before a district judge, and in turn this Court, the Department will be hard pressed to show why I.C. § 23–1010A is not a deprivation of due process of law.

Judge Transtrum very concisely laid out the vice in the system existing since the enactment of I.C. § 23–1010A:

> First, this Court is left with the impression that the agency in this case is not only 'judge, jury and executioner,' but also 'policeman and prosecutor' as well. In this case, the investigation was initiated by an 'anonymous phone call' to the effect that the dancers were going to be performing at the petitioner's lounge in Montpelier. As a result of this call, undercover agents were deployed to the performance. Although it appears that similar performances were held in other

locations throughout the state by this group and others, it is unclear how consistently the agency ferrets out such activity.

> In addition to potential abuse of discretion and enforcement, the potential for bias on the part of the hearing examiner is noteworthy. The hearing examiner is selected and placed on an approved list by the department, then selected by the attorney for the department on a case by case basis and paid accordingly. Further, findings made by these examiners may be reversed on review only if clearly erroneous. In a closely contested matter it takes no great oracular prowess to foresee the effect of a less than independent examiner, one whose continued use by the prosecuting attorney is less than enhanced by an adverse ruling to the department's prosecution.

> Also distressing is the fact that in these proceedings, the quantum of proof required to revoke a license is not clearly specified in the statutes. Under the former license revocation statutes, where a licensee was not previously convicted of violating an obscenity law, a show cause proceeding before a district judge was available to the licensee. At this show cause proceeding, the burden of proof was on the agency to show a violation of the law by a preponderance of the evidence. I.C. § 23–1039 (1974 repealed 1980). By comparison, the current statute provides that revocation can be ordered 'upon sufficient proof to the director.' I.C. § 23–1010A(c).

> Thus, the district court reviewing the decision to revoke must affirm the order if it was made 'upon sufficient proof to the director,' affirmed by a hearing examiner employed and paid by the agency, and, the court cannot say that the findings are clearly erroneous.

> This court is of the opinion that the procedures provided for and the current statutory scheme are unsatisfactory and create a potential for arbitrary enforcement and injustice. Despite these reser-

---

**2.** There are no annotations to the section, leaving it reasonably clear that heretofore there has not been a reported case which would dissemi-

nate this interesting circumstance to the trial bench and bar and to the general public.

vations, however, the court is constrained by the provisions of I.C. § 67–5215 to affirm the order of revocation.

Memorandum Decision and Order, 4–6.

The heart of Judge Transtrum's critical lament on the 1983 change in procedures is quite evident, and it is frightening when one considers that what the legislature did in this area of private enterprise may also find its way into many other areas. As Judge Transtrum has pointed out, under procedures prior to the 1983 amendment the review was a judicial review conducted by a district judge. District judges are wholly nonpartisan, meaning not just that they are elected on a nonpartisan ballot, but that they are *wholly independent*, beholden to no person or agency, including the various state agencies, one of which is the Department of Law Enforcement.

Under the present situation the director of the Department of Law Enforcement makes his own decision as to who he hires to be his "judicial" hearing officer. Thereafter, under the new scheme, district judges are allowed to review the handiwork of the director's hearing officer, but their function is greatly circumscribed because the director has concluded that his hearing officer has indeed gathered together "sufficient proof." I.C. § 23–1010A(c). Compounding that nice arrangement, because the Prohibited Acts of § 23–1010A, parts (a)(1), (2), (3), (4) and (5), can also be the basis for a misdemeanor prosecution, part (b) of said section obviously contemplates that a jury might be so ill-advised as to find the evidence insufficient to convict and thus acquit a licensee; section (c) makes jury acquittal for insufficiency of the proof

of no account in license revocation proceedings when weighed against the director's (one person's) finding that the proof submitted to him (by his own designated hearing officer) is sufficient.

What is sufficient to revoke a license, then, is one person's view, but without the fetters of any legislatively set guidelines as to what is the quantum and quality of proof. The director seemingly stands in shoes similar to those of the chancellor in equity in ye olde English days, where equitable relief was measured out according to the length of the chancellor's nose.[3]

Hopefully the legislature may be caused to see what it has done, which includes according no credibility to a jury verdict, preserving no genuine judicial function to a district judge, and placing virtually unbridled power in the director of the Department of Law Enforcement.

---

**3.** Parts (b) and (c) of I.C. § 23–1010A are as follows:

(b) A violation of any of the provisions of this section by any agent, employee, or other person in any way acting on behalf of a licensee shall constitute a misdemeanor, and upon conviction such person shall be fined not less than the sum of one hundred dollars ($100) or more than the sum of three hundred dollars ($300), or be imprisoned in the county jail for not less than thirty (30) days nor more than six (6) months, or both such fine or [and] imprisonment. Any court in which a judg-

ment of conviction is entered shall certify a copy thereof to the director, and the director shall thereupon commence administrative proceedings to revoke any license of such convicted person.

(c) Irrespective of misdemeanor violations or other criminal proceedings instituted under this section, upon sufficient proof to the director, the director shall revoke any license of any person found to have committed any of the above proscribed acts. The revocation proceedings shall be in accordance with the procedures established in this act.